Sedgwick, J.
The facts presented in this case for the consid eration of the Court are, that the demandants are the children and heirs of Samuel Quarles, deceased, who was the son and one of the heirs of Francis Quarles, who is also deceased ; that the tenant is another son of F. Quarles; that on the 17th of August, 1785, F. Quarles, last mentioned, conveyed to the father of the demandants certain real estate, by a deed purporting to be for a valuable consideration ; * and the son, on the same day, [ * 682 ] made and executed a deed to his father, in which he acknowledged that, in consideration of his father’s conveyance to him, he was fully satisfied and contented as his share of his father’s estate, and did thereby acquit and discharge his father’s estate forever thereafter from having any demands thereupon as an heir to any part thereof
Here was a fair contract understanding^ entered into between the parties, — that the father should give to the son a certain portion of his estate, and that it should be received by the son, in full satisfaction of any claim he might otherwise afterwards have as an heir to his father; and this contract was carried into execution, as far as it was in the power of the parties to do it, by their deeds respectively. The meaning of the parties it is impossible to mistake ; it was fair and honest, and it is right and proper that it should be carried into effect; and it must be so, unless positive rules of law prevent it.
In the argument, it was supposed by the counsel for the demand ants that the acknowledgment in the deed of Francis Quarles the elder, that it was made for a valuable consideration, had concludec the tenant from setting it by as an advancement to Samuel. What, then, are we to say to the deed of Samuel to his father, made on the same day, in which he expressly acknowledges that it was made as an advancement, and as such received by him ? Certainly Samuel *598 was as much concluded by his acknowledgment, as his father was by his. But we are not entangled by this difficulty ; for the principle is, I think, most clearly established, that when one consideration is expressed in a deed, any other consideration consistent with it may be averred and proved. (1) Now, it is perfectly consistent, that although the consideration money expressed in the deed might have been paid, yet that, from the greater value of the estate conveyed, it might have been intended as an advancement. This the tenant in the rejoinder expressly avers, and it being an averment, which by law he was authorized to make, the fact is confessed by the demurrer.
[ * 683 ] * I do not think it necessary for the decision of this cause, so far as respects the statutes of the government, to go back beyond that of 1783, c. 36, the fourth section of which, after directing partition to be made of the estate of an intestate among his children or heirs, as the act directs, proceeds, 111 unless it shall so happen that some one or more of the children or grandchildren shall have portions of the intestate assigned or delivered to them by him in his lifetime ; in which case such portions shall be taken into consideration, and deducted from their shares in such partition respectively.” Now, the demandants’ father had a portion of the intestate’s estate assigned to him by the intestate in his lifetime ; and it must be taken into consideration.
But it is said that the demandants have established their title as heirs ; and as all questions of advancement are the subjects peculiarly of probate jurisdiction, until it appear by the judgment of that court that the provision made for Samuel was an advancement, the title of the demandants, as his heirs, remains unaffected by it; and that they are entitled to recover in a court of law.
What influence this argument would have had upon my mind, if it had been a partial advancement, I do not undertake to determine. But when the deed of the immediate ancestor of the demandants (they claiming as his heirs) is shown to the Court, by which it is demonstrated that they have no title, I know no principle of law by which we are hindered from declaring it.
It has been further urged that the evidence of what shall be deemed an advancement, is confined to the instances expressed in the seventh section of the statute, which enacts “ that any deeds of lands or tenements made for love and affection, or where any personal estate delivered a child shall be charged in writing by the intestate, or by his order, or a memorandum made thereof, or deliv *599 ered expressly for that purpose before two witnesses who were bid to take notice thereof, the same shall be déemed and taken an advancement,” &c.
It is evident to my mind that the intention of the statute was to substantiate certain species of evidence, which, without legislative provision, might be doubtful; and not to enumerate * those particular species, to the exclusion of all others. [ * 684 ] Evidence of advancement may be given in many ways by parole, by writing and by deed, other than that which is expressed ; and if that evidence, derived from either of these sources, (and in many instances it may be much more satisfactory than that mentioned in the statute,) for the exclusion of which there could exist no good reason, be not admissible, there would exist many cases where there had been an actual advancement, without a possibility of proving it. What could be more absurd than that a charge or memorandum by the intestate should be evidence of the advancement of a child, while a solemn acknowledgment by his deed, as in this case, should not be at all admissible evidence for the same purpose ? It is impossible to believe such could have been the intention of the legislature. And in the case of Scott vs. Scott, (2) the Court went into an inquiry, by other evidence than that specified in the statute, to determine whether the estate conveyed by deed was, or was not, an advancement.
The only questions involved in this case, and which are necessary to decide it, are, 1. Was the conveyance to Samuel an advancement ? And if so, 2. Is it to be considered as an advancement in full of his share of his father’s estate ?
That it was an advancement, and an advancement in full, is acknowledged both in the deed of Samuel and in the record before us. Can there be evidence of a higher nature, or which ought to be deemed more satisfactory ? I think not. An advancement, then, was made. It must be considered according to the provision of the statute; and by what rule of law shall we say that the effect which was contemplated by the parties, and fairly and honestly intended, shall be defeated ? I have been able to discover no such rule. The parties were perfectly competent to make the contract, and I therefore conclude that it ought to be deemed obligatory.
But it is said that the father of Samuel, after the agreement which is expressed in the deed, might have acquired property, and that it would be equitable that Samuel should have his proportion of it.
* To this supposititious case I answer, 1. That the [*685 ] *600 record before us presents no fact of that kind, and that we have no right to form conjectures about it. Had the demandants relied on the fact which the argument supposes, it ought to have been alleged in the pleadings ; for the supposition implies that it is material. But no such fact appears, and de non apparentibus, et de non eocistentibus, eadem est ratio. 2. That the residue of the father’s estate, after the conveyance to Samuel,, might have been diminished or wholly lost before the father’s death, so as to have deprived the other children of any portion. And, 3. That if the circumstances of the father rendered it reasonable, in his opinion, for Samuel to have a greater portion than he received by the conveyance, he would probably have made the provision in his will. All contingencies were the subjects of contemplation and of contract ; and after being considered, the contract was formed; and why should it not be executed?
The English statute of distributions, which, in this respect, is. the same in principle with our own, was grounded on the custom of London relative to orphanage. This is most evident from the whole current of their authorities, when inquiring what shall be deemed an advancement within the statute, when it should be put into hotchpot, &c. And it is not unfrequently expressed or implied that this is the case. I will mention only the case of Holt vs. Frederick, (3) which is a remarkable one for this purpose. The mother, being a widow, gave her daughter 10007. marriage portion. After the death of the mother, it was determined that this advancement should not be brought into hotchpot. The consideration which seemed to be decisive was, that the statute of distribution was grounded on the custom of London. There can be no good reason given, why the same facts, which would establish an advancement to have been made within the custom, should not prove it equally such within the statute. And the same reasoning applies equally to both statutes, the English and our own. There is, in fact, but one difference between them, and that respects real estate; and [ * 686 ] *it results from the different lights in which the laws of that country and of this view real property. There lands of inheritance are not, unless expressly so received, an advancement, but here they may be. In other respects, there is not, so far as can bear on the question before us, any distinction which can make a difference. It will be proper, then, to cite, from the English authorities, cases to prove what has been adjudged an advancement within the custom of London, and when they shall be taken to be in full.
*601 In Fawkner vs. Watts, (4) it was determined that proof of an advancement is prima facie evidence of an advancement in full, Now, in the case under consideration, there is doubtless evidence of an advancement; and no fact having been shown to disprove it, the prima facie evidence has become conclusive, that the advancement was in full.
In the case of Edwards vs. Freeman, (5) it appears that provision made for a child when it shall arrive at a certain age, if it arrives at that age, is an advancement; and it is sufficient if it be secured, although not advanced in the life of the father; nor is it an objection, that it depends on a contingency.
In Metcalfe vs. Ives, (6) a man and woman, who intended to intermarry, before their marriage enter into articles, by which they covenant, in consideration of 2000l., which was her portion, to release all right which might accrue to them, out of the father’s estate by the custom of London; and it was determined that her claim was thereby barred.
In the case of Lockyer vs. Savage, (7) it was adjudged that a woman, who, in consideration of 4000?. advanced by her father, released her right to her share, was thereby barred.
In Hancock vs. Hancock, (8) it was resolved that where the wife of a freeman of London is compounded with before marriage by settling a jointure upon her, although it be of lands, she is barred of her customary share.
And in Cox vs. Balitha, (9) it was adjudged that if lands of inheritance be given to a child, in lieu of her orphanage part, and accepted as such, it will be binding.
*It would be endless to mention all the cases which [ *687 ] have been determined upon similar principles. Enough have been noticed to comprehend every point of the case before us so obviously as to render an application of the authorities superfluous. If the same rules of construction, as to the nature and effects of an advancement in cases within the custom, are to be applied to cases within the statute, there can be no doubt what the judgment ought to be. And it will be difficult to find a reason why different constructions should be given ; why an advancement within the custom should mean one thing, and an advancement within the statute another. When the statute of distributions was passed, in i onsequence of the custom of London, the nature and effects of an advancement were well known; and when the legislature extended the same principle to the whole community, it cannot, in my judgment, be supposed that it should be extended in a different manner *602 The reason why we cannot find any thing explicit upon the subject under the statute is, I conceive, because former determinations under the custom had settled the law in relation to it.
The deed in this case, it is true, cannot operate technically as a deed of release, as the deeds of the orphanage cases did not; but there they operated to bar the orphans for the best reason in the world, — because they had agreed that they should ; and here, in my opinion, for the same reason, this deed ought to have the same effect; and that therefore the demandants ought not to recover.
Parker, J., of the same opinion.
Sewall, J.
[After reciting the substance of the pleadings.] The deeds of Samuel, and of Francis, the father, are of the same date, and refer to the same conveyance, property, and transaction, and being in no wise inconsistent, are to be construed as one instrument, expressing together the contract of the parties. And in this view it appears that Francis, the father, on the 17th of August, 1785, conveyed to his son Samuel, the father of the demandants, a certain farm, &c., in consideration of a sum of money, and in some uncertain part, as an advancement in full of Samuel’s share in his father’s estate; which Samuel accepted accordingly, [ * 688 ] * and by his deed acquitted and discharged his father’s estate forever thereafter from having any demand thereupon as an heir to any part thereof.
Notwithstanding this contract and acquittance by their father, the demandants claim as heirs to their grandfather Francis a share and portion of his estate, he having survived his son Samuel, and afterwards died intestate.
The pleadings admit the descent and heirship of the demandants ; and the act (1783, c. 36,) directing the descent of intestate estates, &c., provides that when any person shall die seised of lands, &c., not by him devised, the same shall descend in equal shares to and among his children, and such as shall legally represent them, (if any of them be dead,) except the eldest son, &c., who shall have two shares, &c. And the general question to be decided is, I think, whether the contract and writings between Francis, the grandfather of the demandants, and Samuel, their father, have defeated the inheritance of the demandants, or in any manner estop or bar them of the fruit of it.
The den andants claim their inheritance ; for although their share is to be ascertained by a reference to their father, and is said to be in right of representation, yet it is their right, and never was his. N<jmo est Imres viventis. It will not-be questioned that this contract or bargain of Samuel, if it had been made with a third person, to sell and convey a share and portion of the estate of Francis, the *603 father, would have been utterly void and without effect as a conveyance, whatever had been the consideration, even if Samuel had survived his father, and had become entitled, as an heir, to the share and portion intended to be conveyed. But when he dies before his father, and never acquires any share or portion in his estate, the operation of any deed, in the case supposed, must be considered as at least defeated by the event.
The general rule of the common law is, that no right passes by a release, but a right which the releasor hath at the time of the release made. (10) I need not multiply authorities to establish this rule, or to show its application. Indeed, the counsel *for the tenant have not, either in their pleas or argu- [ *689 ] ments, relied upon the release of the demandant’s father, but rather upon the collateral satisfaction accepted by him in full. And in this view the principles of the common law are equally against them; particularly the rule cited from Vernon’s case, (11) that a right or title, which any one has to any lands or tenements of any estate of inheritance or freehold, cannot be barred by acceptance of any manner of collateral satisfaction or recompense. And this Lord Colee states to be the reason why no collateral satisfaction or recompense made to the wife, in satisfaction of her dower, was any bar to her dower by the common law. And he says, if a man, in consideration of a marriage afterwards to be had with A, makes an estate of certain lands to her for her life, in full satisfaction of all the dower, which after marriage may accrue to her in any of his lands, and afterwards they intermarry, that was no bar of her dower at the common law, for two reasons, — one because she had no title of dower at the time of the acceptance of the satisfaction ; secondly, because no collateral satisfaction can bar any right or title of any inheritance or freehold. Both these reasons apply strongly in the case at bar against the plea of the tenant.
In Vernon’s case, however, the decision maintains a plea of satisfaction by jointure in bar of dower, and in that view was cited as a case in point for the tenant. But that decision rests entirely upon the authority and construction of a provision in that case in the statute of uses, (27 H. 8, c. 10 ;) and in the case at bar, if the plea and rejoinder of the tenant avail to bar the demandants, it must be altogether by virtue of our statute, already cited, directing the descent of real estates, and especially that clause of it which provides in the case of advancements. It is therein provided that partition shall be made, &c., as the act directs, “ unless it shall so happen that some one or more of the children or grandchildren shall have portions of the intestate assigned or delivered them by him in his lifetime ; in *604 which case such portions shall be taken into consideration, and deducted from their shares in such partition respectively.”
[ *690 ] *In construing the deeds of Francis, the father, and of Samuel, together, as I think they must be, they appear to me to be conclusive evidence of an advancement. The objections offered in this view of the subject from the seventh section of the same statute have been satisfactorily answered. The modes of evidence there enumerated are examples only, and not exclusive provisions. But this advancement was to the child, who, in the event, never became entitled to any portion in his father’s estate, as an heir to his father. And although the demandants claim by a right of representation, yet the descent is immediate to them ; and there may be some doubt, I think, whether the statute has made any provision in the case of an advancement to the son, when, after his death, a portion is claimed by the grandchildren in the estate of a grandfather, who had survived the father.
Avoiding this difficulty for the present, and being, indeed, inclined to the opinion that the statute may be extended constructively to this case, the question, then, is upon the sufficiency of the plea and rejoinder, which contain no averments respecting the estate of Francis, the father, nor any averments by which the Court can judge whether the advancement alleged was an adequate portion, or a just and equal share according to the actual circumstances of his estate. And, in short, the merits of the pleas in question, and of the defence, appear to me to rest upon the effect of the acceptance in full by Samuel. The objections, in this view of the case, have been already suggested; and for myself, I see no provision of the statute which operates to bar a child or grandchild of his portion and share by an advancement. On the contrary, the statute provides that advancements shall be taken into consideration, and deducted from their shares in the partition, <fcc. And the consequence of this reasoning is, I think, that every effect allowed to the facts pleaded by the tenant beyond the provisions of the statute ought to be warranted by some rule or principle of the common law.
An analogy has been attempted to be drawn between this case and the cases which have been decided in the courts of common law, but principally in the courts of chancery, in England, upon the effect of advancements by the custom of [*691 ] * London. The decisions, which have been cited and examined, so far as they are in any respect applicable, appear to determine that a declaration by the father, that an advancement was in full, will not operate to prevent a child from an orphanage part, he bringing the advancement into the distribution. And although, by the custom, the case of an advancement in *605 full is especially recognized, and anciently the customary share was a sort of inchoate right, preserved to the child against the will of the father, yet there is no decision at common law that an acknowledgment of an advancement in full made by a child in the lifetime of the father, operates as a release or extinguishment. In lex testamentaria, the author, treating of the custom of London, and citing from a book entitled Privilegia Lond., (12) states that if a freeman advance his son or daughter with a portion, and they, being of full age, give him a release of all claims which they might have on his estate at his death; or if the daughter after marry, and her husband gives the father the like release,—such releases are void ; and the reason is, because neither of them had any right or claim to any part of the father’s estate until after his death. In chancery, a specific effect has been given to releases and contracts to release, when children have accepted advancements in full, by construing them alike, and by decreeing a specific performance ; and in one case, — that of Lockyer & Al. vs. Savage & Al., (13) — by decreeing against the assignees of a bankrupt, that the child of a freeman of London, when of age, may, in consideration of a present fortune, bar herself of her customary part. Decrees in cases of this kind are made after a full inquiry into the equity of the case, and the comparative value of the advancement. The application of these decisions, in a question of common law, is liable, however, to this general objection,— that the custom itself, and the maxims and rules forming parts of it, and by which it is enforced, are, in some degree at least, in derogation of the common law, and arguments from one to the other are not always conclusive.
The statute of distributions in England contains, as to personal estate, a provision very similar to the clause of the * statute of this commonwealth relied upon in the case [ * 692 ] at bar. It is remarkable that no question of a release, or an acknowledgment of an advancement in full, or a collateral satisfaction in the lifetime of an intestate, has ever arisen under the statute of distributions. The reason may be, — and it is the only probable one, in my apprehension,—that advancements are enforced under the statute, not by a supposed release or extinguishment of the right or claim of the party in any case, but as a matter of set-off and adjustment in the distribution
I am, upon the whole, inclined to the opinion that such ought to be the course in the case at bar ; and tho* the rejoinder of the tenant is insufficient in law to maintain h’s olea; or, rather, tho. *1“ plea itself is not a sufficient answer to the detnauaants- claim.
*606 The Chief Justice, having been formerly of counsel in the action gave no ommon.

Judgment for the tenant

 Com. Dig. tit. Bargain and Sale, B 11. — Bac. Abr. same tit. D. —1 Co. 176, Mildmay’s case. — 2 Co. 76, L. Cromwell’s case. — 3 Term Rep. 474, Rex vs. Inhabitants of Scammonden.

 Ante vol. 1. 527.

 2 P. Will. 356.

 1 Atk. 405, 406.

 2 P. Will. 435.

 1 Atk. 63.

8) 2 Str. 947

 2 Vern. 665.

 2 P. Will. 274.

 Co. Lit. 265.

 4 Co. Rep. 1.

 Lex Test. 426.

 2 Eq. Cas Al 398 £ SZ,.847