Nesmith v. Dinsmore.

---

## NESMITH *v.* DINSMORE & a.

The statutes of this State recognize and provide for advancements to children, as an effectual bar to a claim upon the estate of the parent, without an agreement to that effect on the part of the child ; and this rule applies to real as well as personal estate.

In the absence of fraud a child of full age is competent to judge what is a full advancement.

Whether an instrument in writing, purporting to release the interest of a child, could be made available in an action at law, by a child, to recover a portion, *quære.*

A petition for partition is in the nature of a bill in equity.

PETITION for partition of certain lands situated in Windham, in which the petitioner alleged that he was seized of

an interest in common and undivided, in right of his wife, Margaret Nesmith, with the respondents. The respondent, R. P. Dinsmore, pleaded in bar that the petition ought not to be maintained, because the petitioner is no otherwise interested in the premises in right of his wife than as she is the daughter and one of the heirs of Robert Dinsmore, late of Windham, and that in the lifetime of the deceased, to wit., on, &c., the said Margaret being then unmarried, in consideration of the sum of fifty-five dollars and twenty-five cents, by the deceased paid and advanced to her, as and for her full share of his estate, by her note in writing of that date, by her signed, acknowledged that sum, so advanced, to be her full share, part and portion of the estate of the deceased, and renounced and released all further right, title and claim to the estate thereafter.

The petitioner demurred to the plea, and the parties agreed to submit the case arising upon the pleadings to this court.

*Bell*, for the petitioner.

*Porter*, for the respondents.

PARKER, C. J. No question respecting the joinder of the parties arises on these pleadings.

Under the feudal tenures, or under the law of real property, as modified in England, no contract like the one in question could have any existence affecting real estate. But in regard to an orphanage share of personal estate, under the custom of London contracts of this character have been recognized as a good bar of a claim, and enforced in a court of equity. 2 Eq. Cas. Abr. 272, pl. 36; 1 Atk. 63, *Ives* v. *Medcalfe*.

The custom of London in regard to orphanage has been said to be the remains of the old common law, that a man could not give away any part of his estate without the

consent of his children, preserved by the mayor and aldermen, who had the care of orphans, as the common law in London, while it was disused and disapproved every where else. Prec. in Chanc. 596, *Kemps* v. *Kelsey.*

The statute of 22 and 23 Car. II. has been supposed to have been grounded upon this custom of London (4 Mass. 685), but if the custom is only a continuation of the common law in that particular locality, the statute would appear to be a modified restoration of the old common law in cases of intestacy. The custom of London had regard to personal estate only, on the supposition that a freeman would not purchase land, but would employ his whole fortune in commerce. 1 Eq. Cas. Abr. 150, note.

Doubts have been expressed how far a release of a share was valid at law, because the party releasing had no present interest, but it was not doubted that a covenant to release was binding. 2 P. Wms. 272, *Cox* v. *Belitha.* A release without a covenant was held good in equity, and specifically enforced. 1 P. Wms. 639, *Blunden* v. *Barker.* It was urged in that case that the child was not *sui juris;* the awe he was presumed to have of his parent, the duty he owed him, the total dependence he had upon him for all the conveniences of life, would not suffer him to be a free agent in this case; would not permit him to deny giving a release to his father, though upon advancing to him a portion much less than the customary share would come to. But lord chancellor *Parker* answered, "if it should ever appear that this power has been abused, a court of equity would certainly set aside the release thus indirectly gained." Id. 639; 2 Atk. 160, *Heron* v. *Heron.*

An agreement of children that, in consideration that the father would come to London and take up his freedom, they would release any right or demand they might be entitled to in respect of his personal estate, by virtue of the custom, was held invalid; and it was said by the lord chancellor that the custom of London admits of no

such bar, for nothing but actual advancement of a child will have that effect. 1 Atk. 402, *Morris* v. *Burroughs.*

The receipt of a share of a parent's estate in advance, may, in many instances, be very advantageous to a child, without being detrimental to the parent; and we have no reason to doubt that, in accordance with the general principles of the law, such a release may be held here as a valid bar of any legal claim to a share of real as well as personal estate — the real estate here being subject to distribution like the personal property. The transaction is one of advancement, or in the nature of advancement, to the child of its portion; and our statutes expressly recognize and provide for advancements as an effectual bar to a claim on the part of the child, affecting the real as well as personal estate in such cases, without any agreement on the part of the child that what is received shall be an advancement. Rev. Stat., ch. 166, secs. 8–11.

In the absence of fraud or imposition the child of full age may well be permitted to judge what shall be a full advancement. There is authority in this country holding such contracts valid in relation to real estate. 8 Mass. 143, *Kenney* v. *Tucker;* 3 Met. 121, *Trull* v. *Eastman.*

Whether the instrument could have availed to show a legal title in the respondents, if they were prosecuting a writ of entry against the parties in possession, we need not determine. It is set up here by way of defence. Besides, a petition for partition under the statute is in the nature of a bill in equity.

*Petition dismissed.*