Bartley, C. J.
The first inquiry, suggested by the facts of this case is, whether the several gifts or donations made by Philemon N eedles to his four sons-in-law, for which he took the several re *393 neipts in question, can be treated as advancements under the statutory regulation on that subject, in this state.
It was held, in the case of Putnam’s Adm’r v. The Heirs of Putnam, 18 Ohio, 347, that the former laws of this state regulating descents and distributions of personal estates, provided for advancements as to real, but not as to personal property. And this construction, although stringent, and resulting in unjust and unequal •distribution of estates, was affirmed by several decisions made afterward. The difficulty was, however, removed by legislation; and the statute now in force applies the rule in relation to advancements •to estates, personal, as well as real. Ohio Stat., revised, 323, section 10. The provision, however, as to advancements, applies only in •case of intestacy. True it is, Philemon Needles died intestate as to the residuum of his estate now sought to be distributed. But it is apparent from the provisions of his will, that he designed and manifestly supposed that he had made a disposition of his whole estate. He made bequests to all his children severally in various amounts, ■and even anticipated a supposed residuum of $300 in his distribution. The several advancements which had been made to his four •sons-in-law, for which he had taken their said receipts, must have been in his contemplation when he made his will. How much he had previously advanced to his other children does not appear in this case. But it is fair to presume, that in view of all his previous advancements, he made such a distribution of his property, by his will, as he deemed just and proper. In such a case, therefore, although the testator had, unexpectedly and beyond his own anticipation, died intestate, as to a residuum of his estate, the *statutory provision as to advancements could have no just application; and whether it could apply to any case of partial intestacy, where the testator knowingly and designedly made a testamentary disposition of only a part of his property, it is not necessary to consider in this case.
It is insisted, however, that the interest in expectation, or hoped-for inheritance of the daughters, Eachel, Anna, Eebecca, and .Lucinda, from their father’s estate, was released by their several husbands, by virtue of the instruments of writing executed by them respectively to the father, whereby each acknowledged the receipt of the advancement made, and agreed with the father not to set up any further claim against his estate, as one of his heirs, after his decease. And this presents the question of the power of the husband to re *394 lease the wife’s bare possibility, or expectation of inheritance from her ancestor.
• One of the daughters, Lucinda, and two of the sons-in-law, Dailey and G-ray, died before the death of the ancestor, and, therefore, before any actual right or interest could have ve'sted in the wife, by inheritance. The wife of George Dailey and the wife of Thomas Needles, respectively, united with their husbands in signing the receipts. This, however, can not affect the question, or give any legal vitality to the instruments, if they had none without it. If the husband.had the power to release, or, by contract, to bar this mere expectancy of the wife, it was by virtue of his right and control over his wife’s personal estate, and not by means of the wife’s consenting thereto. It may be that, in a disposition of, or an arrangement in regard to, a wife’s property, by the husband, made-with a view to the wife’s separate use or advantage, the consent of the wife might, in a court of equity, be treated as a material element in the transaction. But in the release or assignment of the-wife’s choses in action by the husband, for his own interest, the wife’s uniting with the husband in the execution of the contract, is-a matter of no legal consequence whatsoever: In regard to the personal estate of- the wife, not held in trust for her separate use, the-husband represents the wife, exercises all her authority; and indeed,, in contemplation of law, the legal existence of the wife in that regard, is merged in *that of the husband. There is but one-mode known to our law by which a married woman is authorized to join her husband in the execution of a contract, and that has-' reference to real estate, and is done under certain formalities and guards against marital influence, prescribed by statute, not attempted to be followed in this case. > It was held 'in Stamper v. Barker, 5 Madd. C. C. 157, that the wife could neither be barred of' her right by survivorship to her reversionai’y interests, by her consent in court in favor of her husband, nor could she, upon separation from her husband, bind herself by deed, stipulating that he-should have a certain part of her contingent property when it should fall into possession.
The wife’s consent, even in court, or her joining her husband in an assignment or deed for her reversionary interests, has been held ineffectual as to • her right of survivorship ‘ in numerous cases. Hornsby v. Lee, 2 Madd. C. C. 16; Woollands v. Croucher, 12 Ves. 174; Pickard v. Roberts, 3 Madd. C. C. 384; White v. St. Barbe, 1 *395 Ves. & B. 405. It is by force of the statute in this state that the-wife’s interest in property is affected, at law, by'her joining in the-execution of a conveyance. The inquiry in this- case therefore involves the question of the extent of the power of disposal, by the-husband, of the wife’s contingent interest, or mere expectancy.
It appears to be well settled that the wife’s contingent right by survivorship to her choses in action, immediately reducible into-possession, may be barred by settlement before or after marriage by actual reduction into possession, or certain acts held to be equivalent to actual reduction into possession-; such as the recovery of a-judgment or decree in the sole name of the husband; the taking' of a note or obligation for the debt in the sole name of the husband; by an assignment by the husband for a valuable consideration; or by release. It appears to have been held in England at one time that an assignment for a valuable consideration of the wife’s chosesin action, presently reducible into possession, would not defeat the-right of the wife . by survivorship. Burnett v. Kinaston, Freem. 241. But for a series of years past, it appears to have been settled in that country, that an assignment, or release for a valuable consideration, by the *husband, of the wife’s choses in action immediately reducible into possession, would bar her title by survivorship. Clancy’s Husband and Wife, 150. But the more recent English equity cases are wholly irreconcilable with the former decisions on the subject of the power of the husband to defeat, by assignment, the contingent right of the wife by survivorship to her' reversionary interests, or choses in action not immediately reducible into possession. In Chandos v. Talbot, 2 P. Wms. 601; Bates v. Dandy, 2 Atk. 206; Hawkins v. Obyn, Ib. 549; it was held that the wife’s reversionary or contingent interest, or the possibility of a-term, or the specific possibility of the wife, may be released or assigned by the husband, for a valuable consideration, so as to defeat her title by survivorship. But a different doctrine was held to belaw in Hornsby v. Lee, 2 Madd. Ch. 16; in Purdew v. Jackson, 1 Russell, 70; in Honner v. Morton, 3 Id. 65; and in Mitford v. Mitford, 9 Ves. 87. In the last-mentioned case, Sir William Grant disputed the soundness of the rule, that the husband’s assignment, for a valuable consideration passed the wife’s chose in action, freed' from her contingent right of survivorship, upon the ground that, in such case, the purchaser would take a greater right than the husband had. In Hornsby v. Lee, Sir Thomas Plummer held that the *396 ■husband’s right to the wife’s choses in action was dependent on the •contingency of his reducing them to possession during coverture; that a deed assigning a reversionary interest is not an actual reduction into possession, because it is impossible to reduce a reversionary interest into possession; and that it could not be a constructive reduction into possession, because its only effect is to place the assignee in the same situation as the assignor; that is, if the husband survive the wife, the assignee would retain the property; if, on the other hand, the wife survive, while the interest continues reversionary, she is entitled to the property.
It is proper to observe, that our attention is directed to the question of the wife’s right of survivorship, and the extent of the husband’s power of disposal to affect it by assignment or release. We have nothing to do at present with the question, which is of fre■quent occurrence in chancery cases, touching the extent to which *the husband, by assignment of the wife’s property, may affect what is termed the wife’s equity, to a suitable provision out of the property for the support of herself and her children. That is :a subject wholly disconnected with the question now before us, and presents very different rules for consideration.
In the case of Purdew v. Jackson, above cited, where the question directly arose as to the power of the husband to bar the wife’s right by survivorship to such reversionary interest, by an assignment for a valuable consideration, the authority of the decision in Hornsby v. JDee was strenuously denied; and the master of the rolls, in' affirming his views expressed in the former case, after a patient hearing and searching investigation of the whole subject, said:
“The law of marriage gives the wife’s choses in action to the husband, on condition that he reduce them to possession during its •continuance; if he die before his wife, without having done so, she takes them by survivorship. How, then, his honor asks, can he bar her right of survivorship by an act which is not a reduction into possession, and that, too, at a time when it is impossible, from the nature of the reversionary chose in action, that it should be reduced into possession? That if it be said that her right may be barred by something short of a reduction into possession, namely, an assignment for valuable consideration, we must alter the doctrine laid down in our books. It will no longer be true, that the husband shall not have the chattels personal of the wife lying in action, unless he reduce them into possession during the marriage. That the effect of an assignment tor a valuable consideration, operates no otherwise than by putting the assignee in the place of the *397 assignor; that the assignor can not give to another a power which he himself does not possess; and that, therefore, where the wife has a chose in action, which the husband himself can not recover, he can not assign over to another the right to reduce it into possession. That the husband’s right is merely a right to obtain possession of the subject, when the period arrives at which the wife-is entitled to the possession of it; and if he die in the meantime, leaving his wife surviving, his right is gone, and the right of the surviving wife takes effect. The assignee for valuable consideration must take the right as the husband himself had it; he buys-the chance of the husband’s outliving the wife, or of the reversionary chose in action falling into possession during coverture, and he must wait to see how the event tons out. That in this case the husband had died before the chose in action had been reduced into possession ; the assignee had, therefore, lost all chance of recovering it, and the wife took it by her right of survivorship.”'
This doctrine was reaffirmed in Morley v. Wright, 11 Ves. 12; and also in Ellison v. Elwin, 13 Sim. 309. And *again, in Honner v. Morton, above cited, Lord Channcellor Lyndhurst fully sustained this doctrine, which had been declared by the successive-masters of the rolls, Lord Alvanley, Sir William Grant, and Sir Thomas Plummer, as to the reversionary interest of the wife, and in doing so, he took a distinction between a case where the husband had the power, at the time of the assignment, of reducing the chose in action or interest into immediate possession, and where he had not — holding that, in the former case, the assignment ought, in equity, to be regarded as a constructive reduction of the property into possession; for as he had the power of reduction inte possession, and the assignment amounted to an agreement to do it, equity would regard that as being done which the party had agreed to do. This doctrine, however, so well supported by authority and by reason, and apparently resting on ground ineontestible, was, strenuously and with laborious research, controverted by Chief Justice Gibson, in the case of Siter and another, guardians-of Jordan, 4 Rawle, 468, wherein he contended that marriage worked not only a transfer to the husband of the wife’s choses in action reduced to possession during coverture, but a transfer of the wife’s dominion and power of disposal, so that whatever interest she might have assigned, if a feme sole, the husband could assign or release for a valuable consideration ; and that the distinction between vested and contingent or reversionary interests of the wife, in respect to the marital dominion and power of transfer *398 over it, made in the recent English cases, is without foundation. But the extensive and critical reviews of the English cases, by Chief Justice Gibson, was not necessary to the decision of his case, and -could only have been designed to expose a supposed erroneous theory in the English decisions, inasmuch as the authority of the ■case of Siter is to the effect only, and can go .no further, than that the assignment of a wife’s chose in action, by her first husband, to trustees, for the benefit of the wife and children, and to place it beyond the power of waste by a subsequent husband, was meri torious and valid in equity. The views of Chief Justice Gibson -on this subject, however, have been adopted in subsequent decisions in Pennsylvania, in which they were applicable, and reluctantly ^followed in the recent case of Webb’s Appeal, 21 'Penn. St. 248, wherein the remark is made in the opinion of the ■court: “ However averse to this conclusion some of us might be, if the question were an open one, we remember that our office is jus dicere, and not jus dare; and we bow to authorities which we .are bound to respect.”
This doctrine, however, appears to be peculiar to Pennsylvania. I have not been able to learn that it has been recognized in any well-considered case in either of the other states in this country. 'The case of Tuttle v. Fowler, 22 Conn., goes no further than to decide that the husband’s assignment of the wife’s chose in action capable of immediate reduction into possession, was substantially such a reduction into possession by the husband as to defeat the wife’s right by survivorship.
The doctrine of the decisions in England above mentioned was recognized as law by the court of errors and appeals in Mississippi, in the case of Sale v. Saunders, 24 Miss. 25; and has been followed in numerous other cases in this country.
And the distinguished law-writer, Mr. Clancy, in his treatise on the rights, duties, and liabilities of husband and wife, sustains the ■doctrine of the English decisions in relation to the wife’s right of ¡survivorship in her contingent or reversionary estate, and denies that the power of disposal by the husband, so as to bar the rights •of the wife by an assignment for a valuable consideration, is absolute. The effect of the law upon this subject would seem to be, that the wife’s dominion, or power of disposal, which the husband, by virtue of the marital relation,' assumes over the wife’s choses in •action, consists, not in his succession to the wife’s right of property, *399 but the power of control and management of her choses in action for the wife’s benefit, together with the power of acquiring an absolute right of property in the same, so far as they are capable of reduction into possession.
There can be no ground for a distinction between the power of the husband to bar the wife’s contingent right of survivorship by assignment, and that of doing the same thing by release. If the husband could not by assignment transfer to the assignee any greater interest than that which belonged to him, he certainly *could not by release to the releasee. The reason which controls in the one case, must prevail as to the other. And where the husband has not the power of disposal to affect the wife’s right by survivor-ship by assignment, he could not affect it by release.
This view of the law is decisive of this case. The interests in expectancy of the four daughters of Philemon Needles, whose'husbands executed the instruments in the petition mentioned, were not, of course, capable of reduction into possession at the time of the execution of the instruments, and were not, by either of the husbands, reduced into possession afterward. And in the proceeding now pending, the claim to the inheritance is set up in behalf of each of the wives, and not of -that of either of the husbands.
It has been urged in this case, that where a feme covert has a right which, by possibility, may happen during coverture, the husband may release it, or covenant to release it, for value, and bona fide, so as to bind the feme forever. And this raises the inquiry whether there was any right or interest which could have been the subject-matter of release at the time of the execution of the instruments in question. . It has been said that, “ Where the wife hath any right or duty which by possibility may happen during the coverture, the husband may, by release, discharge it.” Sheppard’s Touchstone, 151. It is true, as a general thing, that all contingent and executory interests, and contingent estates of inheritance, as well as springing and executory uses and possibilities coupled with an interest, are assignable and releasable. But it is also a general rule, that a naked or remote possibility can not be released, for the reason that a release must be founded on a right in being, vested or contingent. 8 Bacon’s Abr. 280; Pellitrean v. Jackson, 11 Wend. 110. Where there is a present existing right, although to take effect iii future, and even then only on a contingency, it may be released. 9 Johns. 123. But in case of a mere possibility, or a *400 remote possibility, which is termed in law a possibility on a possibility (4 Kent Com. 206), there is no right in being which can be the subject of release.
“ The word possibility,” says Smith on Real and Personal Property, *“ has a general sense, in which it includes even executory interests, which are the objects of limitation. But in its more specific sense, it is that kind of contingent benefit which is neither the object of a limitation, like an executory interest, nor is founded in any lost, but recoverable seizin, like a right of entry. And what is termed a bare or mere possibility, signifies nothing more than an expectancy, which is specifically applied to a mere hope of succession unfounded in any limitation, provision, trust, or legal act whatever ; such as the hope which an heir, apparent or presumptive, has-■of succeeding to the ancestor’s estate.” Smith on Real and Personal Property, 192. And it appears to be well settled, that a contingent interest of a person unascertained, or a mere possibility as-distinguished from a contingent interest in a person who is ascertained, or the mere hope or chance of succession of an heir apparent,, can not be released. Shephard’s Touch. 322, 328.
It is manifest, therefore, that at the time of the execution of the' instruments in question, there was no right or interest in being which could have been the subject-matter of release. But it is said, that although such a release or assignment of the mere jiossibilities or expectancies of heirs apparent, is wholly invalid at law, yet that a court of equity will regard it, and give effect to it, as a contract to-release, when the interest becomes vested, and consequently that when the interest does so become vested, the claim of the releaseewill be enforced, not indeed as a trust, but as a right under a contract. Or, in other words, that the hope or chance of succession would be barred by estoppel. It might be a sufficient answer to-this to say that no claim is set up, in this 2n-oceeding, in behalf of either of the husbands to any interest in his wife’s inheritance from her father’s estate; and that the instruments in question, if regarded in equity as contracts to be enforced, must be treated as the contract solely of each of the husbands, and as creating no estoppel against the wife. But for my own part, I feel no hesitation in questioning the validity of such a contract. What is the real character of the contract before us ? Philemon Needles, in his lifetime, made certain advancements to four of his daughters, and took from the husband *of each a receipt for the amount advanced, in which the *401 husband acknowledged the same “ to be in full of all claims he could! have against the estate of said Philemon Needles, after his death,, as one of his heirs," and stipulating for himself and his heirs, “ not to set up any further claim.". Where is the mutuality, either of consideration or of obligation for this agreement? The advancement was a voluntary act; and whether Philemon Needles should thereafter give any more of his property to these children depended on his own pleasure. He could, by his will, so distribute his property as to wholly deprive them of any further share in his estate, or he-could, as he actually did subsequently choose to do, in the distribution of his property, by will, give them a further share in his estate. The stipulation only conceded to Philemon Needles that which was-an inherent legal.right of his own in the disposition of his own. property. The real nature of the contract was such as to impose no binding legal obligation. If Philemon Needles chose afterward to make further donations to these children, this contract could not prevent their accepting it; and if he was disposed to give all the residue of his property to others, he had the legal right and full power so to do without any such agreement.
But aside from these considerations, there is an insuperable obstacle in the way of giving effect to such a contract. The laws of the state have provided the mode for the distribution of a man’s, property after his decease: All dominion of the owner over it ceases with his life; and it must be distributed, according to the-bequests of his will, if he has chosen to make a testamentary disposition of it, and if not, then according to the law of descent and-distribution. . The owner is always allowed to provide by will for-the division and distribution of his property after his decease. And the law has provided regulations, so far as the distribution of the-estates of intestates can be affected by previous advancements to-children. A man can not provide for the division which shall be-made of his property after his death, by executory contracts with, his children, instead of last will and testament. And to allow an-intestate to control the course of descent and distribution by mere executory contracts with his children, ^during his life, would be to allow him to set aside the laws of the state. The property of a deceased person must pass by devise or descent. And the operation of the laws of the land in this respect can not be defeated by any kind of executory contracts, made for the purpose of controlling or affecting the distribution of a man’s property after his death, *402 This opinion is in accordance with the views expressed by this court, in the case of Crane v. Doty, 1 Ohio St. 279.
We have been referred to the case of Firestone v. Firestone, 2 Ohio St. 415, as an authority to sustain the validity of such a contract. Although some of the reasoning of the opinion in that case would seem to favor such a contract, yet the effect of that case is certainly not in favor of the enforcement of such an executory contract, inasmuch as the decision is expressly placed upon the ground that the contract had been fully and specifically executed by an abandonment on the part of the son of all claim on the estate, after the death of the father.
The case of Ives v. Metcalfe, 1 Atk. 63, is relied on as sustaining such a contract. That case is as follows: A and his wife coveenanted in articles before marriage, in consideration of £2,000, the wife’s portion, to release all the right that might accrue to them ■out of her father’s personal estate, by the custom of London. The lord chancellor, in sustaining this contract, says: “ It is highly reasonable that such kind of articles should be carried into execution, and that when a father is bountiful to his children in his lifetime, that he should have his affairs settled to his own satisfaction.” This reason would be wholly futile under the laws of Ohio, for a man can have his affairs settled to his own satisfaction here by making his will, without relying upon any such .executory contract. But the lord chancellor adds : “ I found my opinion, too, on an old law well known in this city by the name of Jud’s law, whereby a husband was authorized to agree with the father for the wife, though she was under age.” There are numerous other cases ¡bearing some analogy to this decided on the peculiar custom of London, and, therefore, entitled to no weight in the case before us.
In the case of Morris v. Burroughs, 1 Atk. 398, the lord ^chancellor refused to enforce a somewhat similar contract, saying, that agreements of this kind ought not to receive encouragement. Other decisions in England, however, have been referred to, which go iar to sustain such agreements.
The case of Quarles et al. v. Quarles, 4 Mass. 680, to which reference has been made, turned on the question of an advancement under the statute of Massachusetts, and is, therefore, not an authority against the conclusion expressed in this case.
Reference has been made to a class of cases, where one of the ■heirs presumptive has purchased and paid a valuable consideration *403 for the expectancy of another of the heirs in the ancestor’s estate; and where two of the children have contracted with each other, to ■divide equally whatever may come to them from an ancestor by devise or descent, in which such contracts have been sustained. .Such is the effect of several of the cases, English and American, referred to by counsel in this case. Trull v. Eastman and Wife, 3 Met. 121; Fitch v. Fitch, 8 Pick. 480; Beckley v. Newland, 2 P. Wms. 182. These cases, however, turn upon a wholly different principle from that of the case before us, and bear no analogy whatever to it. Where two of the children contract with each other in regard to their expectancy from their ancestor, they stand upon equal footing, and although such contract can not operate by way of assignment or release, yet where a valuable consideration has been paid, it may operate by way of estoppel, or be enforced in equity.
But in no view which I can take of such an executory contract between the ancestor and the heir expectant, can it be sustained on any clear and satisfactory ground.
Ordered that an equal distribution be made among all the heirs .at law of Philemon Needles, deceased, of the residuum of his estate undisposed of by will.
Brinkerhoff, Bowen, and Scott, JJ., concurred.
Swan, T., having been of counsel, did not sit.