Havens v. Thompson and Allen.

---

HAVENS vs. THOMPSON and ALLEN.

1. An advancement in money, made by a father in his lifetime to one of his sons, cannot have any effect upon the share of the real estate of the father, which, at his death, descends to the son. Only advancements or settlements in land can have such effect.

2. Whether an agreement by parol, or in writing without seal, by a son with his father, on receiving an advancement in money, that it shall be in full of the son's share of the father's real estate at his death, can have any effect.—Quære.

---

On motion to dissolve injunction.

*Mr. McLean,* for motion.

*Mr. W. H. Vredenburgh,* contra.

Havens *v.* Thompson and Allen.

THE CHANCELLOR.

Daniel Havens, the father of the complainants, died intestate on the 3d day of April, 1871, seized of a farm in Monmouth county. He had, in his life, made advances to his son, Benjamin L. Havens, in money, and on the 7th of January, 1867, advanced him the further sum of $600, upon an agreement that it was to be in full of all the share of Benjamin in his farm, after his decease, and that he was to have no other portion therein after his father's death; and Benjamin, upon the payment of the $600, gave and signed a receipt in these words: "January 7th, 1867. Received of Daniel Havens the sum of six hundred dollars, in lieu of dowry."

On the 8th of May, 1871, the defendant, Thompson, sued out a writ of foreign attachment from the Court of Common Pleas of Monmouth county, against the estate of Benjamin, who had removed out of the state, and was residing in Missouri. Under this writ, the interest of Benjamin in his father's farm was attached by the sheriff before the 25th of that month, and such proceedings were had that judgment was entered in favor of Thompson against Benjamin. And thereupon, the defendant Allen, who had been appointed auditor by order of the court, advertised the estate of Benjamin in his father's farm for sale.

On the 20th of October, 1871, after the issue and execution of the attachment, Benjamin conveyed and released his interest in the farm to the complainants, two of the sons of Daniel Havens.

The complainants file their bill under the act of 1870, to compel the determination of claims to real estate and to quiet title. The object of the suit is to have an adjudication that will settle the validity of the claim under the attachment, and the object of the injunction is to prevent a sale until the title is thus settled. If it is clear that the claim of the defendants is a legal and just lien upon the estate, the injunction should not be retained, or the defendants further delayed in their remedy.

Havens *v.* Thompson and Allen.

The complainants contend, first, that the advancements made by the father of Benjamin will, under the first section of the act of descents, cut him off from any part of the real estate of his father, unless it positively appears that the advancements were not equal to his share; and secondly, the agreement at the time of the advancement of $600, on January 7th, 1867, and the receipt then given, will prevent Benjamin from inheriting any of the real estate, and so prevent the defendants having any lien by the attachment.

The act of descents only bars a child from inheriting when the advancement is made in land; it has no reference to any advancements in money, or in any other way than by real estate. There is no authority or decision for extending this provision beyond the clear meaning of its words. The thirteenth section of the act concerning executors and administrators, which is substantially the same as the English statute of distributions, makes provision for the deduction from the distributive shares of each child of any land or estate, by settlement or any advancements, clearly including both lands and money.

The provision in the act of descents for advances was an innovation upon the law of England. It could have no place there except between coparceners, and lands held in gavel kind; all else went to the eldest son. And in introducing the principle into the legislation of this state, the more general and just provisions of the statute of distributions were disregarded; whether purposely or by inattention, the result is the same. The courts cannot supply the omission or the designed unfairness of the legislation.

The effect of the agreement, on the payment of the last advance of $600, and of the receipt then given, presents a different question. It is certainly just and right that effect should be given to such agreement. If the father advanced to his son what was agreed upon, and believed to be his full share of the inheritance upon such agreement, and died intestate, in full faith that the agreement and receipt would shut out a son who had received his full share, from claiming

more at his death, it would be great injustice to the other children to allow Benjamin or his creditors to participate in the estate left by him.

The question, whether this should prevent Benjamin from inheriting under the act of descents, is one peculiarly proper to be decided by the courts of law. It has never been raised or decided in this state. The only authorities I find on the subject are in Massachusetts, in *Quarles* v. *Quarles*, 4 *Mass.* 680, and in *Kenney* v. *Tucker*, 8 *Mass.* 143. It was held that a release executed by a son to a father, on an advancement by him, from all further claims on his estate after his death, was sufficient to bar the son after the death of the father, intestate; and in one of the cases, where the son died before the father, was held sufficient to bar his children, who were the direct heirs, and had executed no release.

In those cases the releases were instruments under seal, and expressly released the estate and the heirs of the father; but as there was no estate or right to pass by the release, or upon which it could operate, the only effect to be given to these instruments, was that of agreements upon fair consideration. They could have no technical effect as conveyances to pass the estate. And by way of estoppel *in pais* they have no more force than the parol agreement and receipt in this case, which were intended to induce, and did induce, the testator to rely upon them to effect a just division of his estate without making a will.

But this case differs from the cases in Massachusetts, in the circumstance that in them, the intent and agreement was fully expressed in the releases, writings signed and under seal. There could be little danger of fraud by perjury, which the statute of frauds in all cases of title to lands, and the statute of wills providing against parol proof of the intentions of a dead man, seem designed to prevent. But in many cases children may be tempted to procure parol evidence, that on payment of an advance to a brother by a deceased father he had agreed to accept it in full of his share of the estate after the father's death. In this case the receipt is so indefinite

and unintelligible that its whole effect depends on parol testimony, and I hesitate much in adopting a rule that will place so much on parol testimony, in cases where the question will often arise many years after the transaction. I shall therefore not determine it on this motion to dissolve the preliminary injunction.

By the provision of the act of 1870, the question must, on application of either party, be referred to the courts of law to decide. If not so referred in this way, this court will, on the final hearing, decide it.

In the meantime, as a sale under the attachment, with this question unsettled, cannot be fairly had, and may occasion a great sacrifice, and as a delay cannot be of serious injury to the defendants, I will, in exercise of the discretion incumbent on this court in such cases, retain the injunction until the hearing.