WILLIAM B. BISHOP *et al.*

*v.*

FRANCES DAVENPORT *et al.*

1. ADVANCEMENT—*what will not be so regarded.* Where the heir of an intestate has received property from such intestate, in his life-time, and by an instrument in writing, whether under seal or not, acknowledged the receipt thereof as his full share of the estate, the property so received, not having been charged to him, and the transaction being untainted with fraud, must be held to be in full payment and satisfaction of his share of the estate, by express agreement.

2. SAME—*not within the statute.* The provisions of sections 63 and 164, of the statute of wills, bearing upon the subject of advancements, have no application to a case of this character.

3. RELEASE OF EXPECTANCY—*by a married woman or minor—void.* But in such case, if, at the time of the execution of the release, the person giving it was a *feme covert*, such agreement is void, or if a minor it is not binding upon him.

4. SAME—*equally void—if executed by the husband for his wife.* Nor will it avail anything that such release was executed by a married woman, jointly with her husband. The husband has no authority to make an agreement of that character, which will bind his wife.

APPEAL from the Circuit Court of Montgomery county; the Hon. EDWARD Y. RICE, Judge, presiding.

Messrs. A. N. KINGSBURY, COALE & JOHNSON, for the appellants.

Messrs. PHILLIPS & TRUITT, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, brought for partition, assignment of dower and distribution of personal estate.

The bill states, that in the month of October, 1867, Joel Gunter died, seized of the land described in the bill, intestate, and left as his widow, Ann M. Gunter, being the second wife of deceased, and as his children and heirs at law, by his first marriage, the complainants, (except two, who are descendants of a deceased child,) and two of the defendants, being six children in number by the first marriage, and that he left also, by said widow, Ann M. Gunter, seven children, six of them being minors, who were made defendants, together with his administrator. The bill further states that each of said children, by the first marriage, received of the said deceased $100 by way of advancement, (except Joel Gunter, Jr., who received $800,) and gave a receipt therefor.

The bill further states that the administrator refuses to allow any of the complainants, or those who have signed receipts as above stated, to participate in the distribution of the personal estate of deceased, except his wife, Frances Davenport, and that the personal estate, after paying the debts and the widow's allowance, will amount to $2,000 dollars, and that the real estate is subject to the dower of the widow, Ann M. Gunter, and is of the value of $4,000.

The bill further states, that all the children of Joel Gunter, deceased, are each entitled to the one-thirteenth part of said real and personal estate, subject to just abatements and deductions in consequence of the advancements as aforesaid, except Joel Gunter, Jr., who has received his full share ; and that the two grandchildren are each entitled to the one-twenty-sixth part, subject to such abatement, in consequence of advancement to their mother.

The bill further states, that complainants are each willing, and offer to bring into *hotchpot,* the respective amounts received by them by way of advancement, and prays for partition of the

lands according to the interests of the parties, division of the personal estate after payment of debts, and assignment of dower. Copies of the receipts recited in the bill are annexed to, and made part of the bill, and are as follows:

"Received of Joel Gunter, Sen., my father, $800, in full of my share of my father's estate, whether he shall die without will or otherwise.

"October 14, 1859.        JOEL x GUNTER, JR."
                          HIS
                          · MARK.

Attest: H. Rountree.

"We do hereby acknowledge to have received our shares in full, being in lands to us heretofore deeded, and in horses given to us by our father, Joel Gunter, of our father's estate, and we hereby release all claims to any share, part or portion of our father's estate, real and personal, forever. Given under our hands and seals this 4th day of September, 1847.

THOMAS GUNTER, [L. S.]
WILLIAM E. GUNTER. [L. S.]"

Attest: H. Rountree.

"Received of Joel Gunter, my part in full, in cash and property, of the said Gunter's estate, this December the 25th, 1854.

FANNY GUNTER."

"Received of Joel Gunter the full amount of our portion, or share, of the estate of said Gunter, by right of Minerva, the daughter of said Gunter, said payment being in money and property to our full satisfaction.

ISAAC J. BISHOP,

May 7th, 1849.        MARGARET M. x BISHOP."
                      HER
                      MARK.

"Received of Joel Gunter, our part in full, in land and other property, of the estate of said Gunter.

WILLIAM B. BISHOP, [L. S.]

May 17th, 1848.        JOANNA x BISHOP. [L. S.]"
                       HER
                       MARK.

The said Margaret M. Bishop and Joanna Bishop were married daughters of Joel Gunter, Isaac J. and William B. Bishop being their husbands.

The answers admit the receipts, but deny that the amounts received were by way of advancement, and aver that they were received in full satisfaction, release and discharge, of the interest of the parties in and to the estate of the deceased.

There is no dispute here about facts, and the only question is, as to the legal effect of the foregoing receipts—whether they are to be taken as advancements in full of the shares of the children giving them, in their father's estate.

That the parties so intended, and so agreed, is manifest from the reading of the receipts themselves, and their agreement should have full effect, unless there is some legal objection of sufficient force to defeat it.

The receipts do not show the amounts that were received, but they appear to have been $100 each, in money or property; and, as the same amount was paid to each one of the six children by the first marriage, it would seem to have been a family arrangement, by which those children were paid off, and received in a present sum the value of their portions of their father's estate, expected in the course of law to fall to them.  There is no pretense of any oppression, or advantage taken of the children, or undue influence, and so many different persons acceding to the arrangement, and in addition, the husbands of two of them sanctioning it, would tend strongly to preclude any such idea.

The sum of $100 seems small and inadequate as a child's share of this estate, as it was, at the time of the father's death, in 1867; but we do not know how it might have been deemed at the time of the making of the payments, as there is no evidence of the value of the estate at any time previous to 1867. When these sums were paid, it might have well been regarded that such a present sum of money, paid in hand, was the full equivalent of the value of an uncertain portion of the father's estate, to be realized in a distant future.  Two of the payments were made as long ago as 1847; $100 then put and kept, with its increase, at ten per cent interest, would have amounted, in 1867, to a sum at least fully equal to a child's share of the

estate, as it was then left; and two other of the payments were made in only one and two years afterwards.

If any one of these payments might not be considered to be of the adequate value of an expectant portion of the estate, it can not justly be said to have been grossly inadequate.

The father had the full disposing power over his property, and his disposition of it should not easily be interfered with. As to the elder branch of his children, who had received their maintenance and education, and gone forth and set up for themselves, he disposed of his estate as to them, by making a present provision for them, in full satisfaction of all their interest in his estate, which was deemed by him to be a proper one, and which they accepted as satisfactory to themselves, which left the residue of his estate, under the law, to go to the younger branch of his children in equal parts. Upon this he had a right to rely, as being the final disposition of his property, and in consequence of it he might have forborne to make a will by which he could have secured the same end.

The provisions of our statute, bearing upon the subject of advancement, are the two following sections in the statute of wills :

"Where any of the children of a person dying intestate, or their issue, shall have received from such intestate, in his or her lifetime, any real or personal estate by way of advancement, and shall desire to come into the partition, or distribution of such estate, with the other parceners or distributees, such advancement, both of real and personal estate, shall be brought into *hotchpot* with the whole estate, real and personal of such intestate, and every person so returning such advancement as aforesaid, shall thereupon be entitled to his or her just proportion of said estate." Gross' Stat. 807, § 63.

"Where any heir of an intestate has received money, goods, chattels, or real estate from such intestate, if the amount so received shall be charged to such heir by said intestate, the same shall be taken into computation in making distribution of the estate, upon being brought into *hotchpot* as aforesaid :

*Provided,* that an heir who has received from the intestate more than his share, shall in no case be required to refund." Ib. 824, § 164.

But we do not think this case comes within the purview of either of said sections. The sums received were not charged to the heirs by the intestate, nor can they properly be said to have been received by way of advancement; they were received in full payment and satisfaction of their shares and portions of the estate, by express agreement. Such releases of an heir's expectancy have been upheld as valid in the following cases: *Quarles* v. *Quarles,* 4 Mass. 680; *Kinney* v. *Tucker,* 8 ib. 143; *Fitch* v. *Fitch,* 8 Pick. 479; *Nesmith* v. *Dinsmore,* 17 New Hamp. 575; *Parsons* v. *Ely,* 45 Ill. 232, and in 2 Story's Eq. Ju. § 1040 b.

We lay no stress upon the different wording of the above copied instruments of evidence. One only, that of Thomas and William E. Gunter, is a formal release under seal; but all of them contain acknowledgments of the receipt of the full amount of the shares of the signers in their father's estate. They are evidence of an agreement to take whatever was received, in full of their shares of the estate; and, as in equity, what is agreed to be done is considered as done, no claim should be allowed in a court of equity, to be asserted to the property of this estate, in opposition to such agreements.

The bill alleges that Margaret M. Bishop was under age at the time of the giving of her receipt, but the answers do not admit it, and there being no proof upon the point, she must be taken to have been of full age.

Joanna Bishop is proved to have been under age at the time of the giving of her receipt, and her receipt and agreement are not binding upon her. And she, as well as Margaret M. Bishop, were married women at the time of the giving of their receipts, and for that reason their releases and agreements are void.

But it is contended that their husbands had the right, themselves, to receive the amounts specified in the receipts, and sign

the receipts; that they did so, and that thereby they barred all claim of their wives to any share of their father's estate. But admitting that the husbands, by virtue of their marital rights, were entitled to receive, and to hold whatever money or property was paid to their wives, it does not follow that it was competent for them to make an agreement, binding upon their wives, that the money or property, so received, should be taken in full satisfaction of the wives' shares in their father's estate. We do not think the husbands, by virtue of their marital rights, had authority to make a valid agreement of that kind. The wife's expectancy from her father's estate, not being capable, then, of being reduced into possession, the husband could not make a valid relinquishment of it.

There was error in dismissing the bill, as to Joanna Bishop and her husband, and as to John E. Bishop and Mary J. Turner, the two latter being the children and heirs of Margaret M. Bishop, deceased, and the decree of the court below is reversed as to them, and otherwise affirmed; and the cause is remanded as to Joanna Bishop and William B. Bishop her husband, and John E. Bishop and Mary J. Turner, for further proceedings consistent herewith.　　　　　　　　　*Decree reversed in part.*