ASA H. SIMPSON ET AL.

v.

CHARLES S. SIMPSON ET AL.

1. RELEASE BY EXPECTANT HEIR.—A son, in 1855, in consideration of a conveyance to him from his father of certain lands, executed to the latter an instrument under seal releasing in favor of his expectant co-heirs, all claim or right which he then had or might thereafter acquire in his father's estate, and acknowledging that said conveyance was intended by his father and accepted by him in full satisfaction of all his interest in said estate. The son died before the father, leaving three children surviving him. The father subsequently died intestate. *Held*, that the release is not within the statute in relation to advancements; that the son having died before his father, never acquired by descent or inheritance any interest in the estate, and the mere naked possibility, which was the subject of the contract, became extinguished; that the three children, on the death of their grandfather, are entitled by descent to the share in their grandfather's estate which their father might have inherited if he had been living, and had not executed the release in question.

Simpson v. Simpson.

2. Privity.—As the son never had any interest in his father's estate, but only a mere possibility of inheriting a portion of it, he never sustained to it any such relation as would bring him into privity with his children.

Appeal from the Superior Court of Cook county; the Hon. George Gardner, Judge, presiding. Opinion filed March 3, 1885.

The record in this case contains a stipulation embodying all the facts appearing in evidence at the hearing below, so far as they have any bearing upon the rights of the parties to this appeal. Those facts as set forth in the stipulation, are as follows:

On the 3d day of December, 1880, John Simpson, Sr., departed this life intestate, leaving him surviving his widow, and John Simpson, Jr., Andrew Simpson, George Simpson and Charles Simpson, his sons, and Rhoda Cox and Margaret Hammond, his daughters. Amos P. Simpson, another son, died September 24, 1880, leaving him surviving Asa H. Simpson, Ida M. Simpson and Burnell Simpson, his children and only heirs at law; also Mary Pratt, another daughter of John Simpson, Sr., died during the lifetime of her father, leaving her surviving two daughters, Elizabeth Pratt and Frances Pratt, her only heirs at law. John Simpson, Sr., at the time of his death, owned and possessed real estate and personal property, and an administration upon his estate was had in the Probate Court of Cook county, Illinois. In his lifetime he conveyed to John Simpson, Jr., certain real estate, and received back from him a release substantially like the one hereinafter set forth. He also conveyed to his sons, Andrew Simpson and George Simpson, certain real estate, with an express agreement between himself and them, that the same was to be received by them in full of their respective shares in his estate. He also conveyed to Amos P. Simpson the land described in the following release, and the latter thereupon executed and delivered to his father said release, in the words and figures following:

"In consideration of the conveyance to me this day of the W. ½ E. ½ of the northeast ¼ and 60 rods in width taken from

the east side of the W. ½ of the N. E. ¼ of section number nine, township 37, N., of R. 13, E. of the third principal meridian, in Cook Co., Ill., by John Simpson, my father, and Elsie Simpson, his wife, I do hereby release all claim and right which I have or may hereafter have or acquire as heir of said John Simpson, in all his estate, real or personal, in favor of the other heirs of said estate, except John Simpson, Jr., who has received his portion of said estate by the conveyance of land in the same manner as I have. The conveyance to me of said premises as aforesaid, being intended by my father and accepted by me in full satisfaction of all my interest in his estate.

"Witness my hand and seal, this 29th day of January, A. D. 1855.

"AMOS P. SIMPSON. [SEAL.]"

It is further stipulated that the only question presented by this appeal is, whether the release above set forth is legally sufficient to bar said Asa H. Simpson, Ida M. Simpson and Burnell Simpson from having any share or interest in the estate of their grandfather, John Simpson, Sr. The court below decided that question in the affirmative, and rendered a decree accordingly, and that decision is now assigned for error.

Messrs. VAN ARMAN & VALLETTE, for appellants; cited 2 Story's Eq. Jur., § 1040 c.; 1 Story's Eq. Jur., § 729, note 6; Jenkins v. Stetson, 9 Allen, 128; Powers' Appeal, 63 Penn. St. 443; Galbraith v. McLain, 84 Ill. 382.

As to privity: 2 Smith's Leading Cases, 626; 3 Washburn on Real Property, 69.

As to advancement: Bishop v. Davenport, 58 Ill. 105; Galbraith v. McLain, 84 Ill. 379; Kershaw v. Kershaw, 102 Ill. 307.

Mr. E. F. RUNYAN, for appellees; cited Fitch v. Fitch, 8 Pick. 479; Quarles v. Quarles, 4 Mass. 681; Kershaw v. Kershaw, 102 Ill. 312; Parsons v. Ely, 45 Ill. 232; Bishop v. Davenport, 58 Ill. 105; Kenney v. Tucker, 8 Mass. 143; Purples' Statutes, 1856, § 51, p. 1201; Galbraith v. McLain, 84 Ill. 381.

BAILEY, J. John Simpson, Sr., conveyed certain lands to Amos P. Simpson, one of his sons, and in consideration of

Simpson v. Simpson.

such conveyance, Amos P. Simpson executed to his father an instrument under seal, releasing, in favor of the other heirs of his father's estate, all claim or right which he then had or might thereafter acquire in said estate, and acknowledging that said conveyance was intended by his father and accepted by him in full satisfaction of all his interest in said estate. Amos P. Simpson died during his father's lifetime, leaving him surviving three children, the appellants in this case. Subsequently his father, John Simpson, Sr., died intestate, and the question is, whether the appellants' right to inherit such portion of their grandfather's estate as would have descended to their father if he had been living, was cut off by said release.

The question arises, whether the conveyance of said lands to Amos P. Simpson, from his father, was an advancement, within the meaning of our statutes, and, if so, how far his children should be held to have been affected thereby. It will readily be observed that the eighth section of our present statute in relation to the descent of property can have no application, as that statute went into force July 1, 1872, while the release in question was executed January 29, 1855. The legal effect to be given to the release must, of course, be determined in accordance with the statute in force at the date of its execution, and the statute then in force seems to have contained no provision determining or affecting the rights of the children of a person who, after having received an advancement, dies before the death of his father, from whom he received it.

But the decisions of the Supreme Court seem to have placed it beyond question that, whatever force is to be given to the release, it is not within the statute in relation to advancements. Thus in Bishop v. Davenport, 58 Ill. 105, certain children who had each received from their father certain portions of his property, executed receipts and releases in various forms, acknowledging the receipt by them of their respective shares in his estate in full, and forever releasing all claims thereto. Their father having died intestate, it was held that, while the releases were to be enforced as express agreements, they did

not come within the provisions of the statute in relation to advancements. So in Kershaw v. Kershaw, 102 Ill. 307, a son having received from his father a conveyance of land, executed to him an instrument, by which he acknowledged that said land was deeded as an advancement to him out of his father's estate, and was accepted by him as his full and entire share of said estate. It was held that, while the instrument would be enforced as an executed contract, there was no advancement.

Whether the mere naked possibility or expectancy of an heir, apparent or presumptive, can be made the subject of an assignment or release, has been the subject of very grave controversy; but the law seems to be now well settled that such assignment or release, if made *bona fide* and for an adequate consideration, will be enforced in equity, after the death of the ancestor, not indeed as a trust attaching to the estate, but as a right of contract. 2 Story's Eq. Juris., § 1040 c. In Mitchell v. Winslow, 2 Story, 630, Story, J., discussing this question, says: " Courts of equity do not, like courts of law, confine themselves to giving effect to assignments of rights and interests which are absolutely fixed and *in esse*. On the contrary, they support assignments, not only of choses in action, but of contingent interests and expectancies, and also of things which have no present, actual or potential existence, but rest in mere possibility only. In respect to the latter, it is true that the assignment can have no positive operation to transfer, *in præsenti*, property in things not *in esse;* but it operates by way of present contract, to take effect and attach to the things assigned, when and as soon as they come *in esse;* and it may be enforced as such a contract *in rem* in equity." To the same effect, see Woodworth v. Shorman, 3 Story, 171.

In Wright v. Wright, 1 Vesey, Sr., 409, Lord Hardiwicke, discussing the grounds upon which an assignment, by an heir, of his expectancy, may be sustained in equity, says: " An assignment always operates by way of agreement or contract, amounting, in consideration of this court, to this, that one agrees with another to transfer and make good that right or interest, which is made good by way of agreement."

Mr. Spence, in his treatise on Equity Jurisprudence, says:

' A naked possibility or expectancy of an heir to his ancestor's estate, or even of the anticipated right of a person or next of kin, may be subject of a contract in equity, which will be equivalent to an assignment of the property, if, and when, it shall fall into possession." 2 Spence's Eq. Juris., 865.

See also, Varick v. Edwards, 1 Hoff. Ch. 382; Mansell v. Lewis, 4 Hill, 635; Jackson v. Waldron, 13 Wend. 178; Hobson v. Trevor, 2 Peere Wms. 191; Bishop v. Davenport, *supra*, and cases cited.

It is clear, then, that the release executed by Amos P. Simpson did not operate as an assignment of any present interest in his father's estate, but had force and vitality as a present agreement on his part, that such interest in said estate as might at any time in the future come to him by descent, should go to and be enjoyed by his co-heirs. Had he survived his father, so as to have inherited any portion of his estate, the agreement would doubtless have attached to such interest, and equity would have compelled its proper performance. But having died before his father, he never acquired, by descent or inheritance, any interest in the estate. The mere naked possibility which was the subject of the contract became extinguished. It never was *in esse*, and the circumstances, therefore, under which alone the contract could become operative and enforceable, never transpired.

He being dead, his children inherited their grandfather's estate, not through him, but directly from their grandfather.

Not only then was said contract, from the very nature of the case, incapable of enforcement, but we know of no principle upon which it could, in any event, be binding upon his children. So far as their interest in their grandfather's estate was concerned, they did not sustain to their father the relation of privity. As defined by Mr. Greenleaf, " privity denotes mutual or successive relationship to the same rights of property." 1 Greenl. on Ev., § 189. As Amos P. Simpson never had any interest in his father's estate, but only a mere possibility of inheriting a portion of it, he never sustained to it any such relation as would bring him into privity with his children. He was not the channel through which they de-

rived their interest. The legal relation of heir and ancestor, which would have constituted them privies in blood, did not exist between them.

Mr. Washburn, in his treatise on the Law of Real Property, in discussing the validity and effect of releases by heirs apparent, of their right to the succession, says: " Equity holds a contract of an expectant heir who becomes heir *de facto,* binding on him, though equity does not extend this to his heir." 3 Washb. on Real Prop. (mar.) 465.

We are referred to the cases of Quarles v. Quarles, 4 Mass. 680, and Kenney v. Tucker, 8 Id. 143, as holding a different doctrine. In those cases it seems to have been held, that where a father conveyed to his son certain lands, and received back from him a deed in which the son acknowledged himself satisfied as to his share of his father's estate, and acquitted and discharged the estate from any demand thereon as heir, the children of the son were barred from any interest in their grandfather's estate. These decisions, however, rested solely upon the principle that the conveyance to the son was an advancement to him in full. But as we have seen, the contrary rule prevails in this State, it being held that such release is not in the nature of an advancement, but is to be upheld as an express contract.

We are of the opinion, then, that the appellants, on the death of their grandfather, became entitled by descent, to the share in their grandfather's estate which their father might have inherited if he had been living, and had not executed the release in question.

The decree will therefore be reversed and the cause remanded, with instructions to the court below to enter a decree in favor of the appellants, in accordance with the foregoing opinion.

Decree reversed.