232 PARSONS *v.* ELY *et al.* [Sept. T.,

Syllabus.

## JAMES A. PARSONS

*v.*

## DAVID J. ELY *et al.*

1. CONVEYANCES — *contingent estates.* An estate in expectancy, though contingent, is a proper subject of contract.

2. All agreements by expectant heirs in regard to their future contingent estates, when fairly made, upon valuable considerations, will be enforced in equity.

3. Where an agreement in relation to an estate in expectancy has been fairly made, and the parties have fully and fairly executed their agreement, a court of equity will not interfere to set it aside.

4. MARRIAGE SETTLEMENTS — *contingent estates.* Where a father, before the marriage of his daughter, conveyed to trustees for her use certain property, to be held by them in trust for her and her children, and afterward, by an instrument under seal, dated the day before, and acknowledged on the day of the daughter's marriage, an agreement was entered into by and between the daughter, her future husband, the father and the trustees, providing, in case the daughter should die, leaving children, who should also die before they attained the age of twenty-five years, that upon the death of such children the trustees should convey the property to the father, — *held*, that such agreement was valid, and a court of equity would enforce its provisions at the instance of the father, upon the happening of the contingency mentioned.

5. CONTRACTS — *contrary to public policy — particeps criminis.* In case of an agreement, void on the ground of public policy, the law will not interfere at the instance of a party *in pari delicto,* to enforce its execution, or rescind it, if executed.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

James A. Parsons, the appellant, filed his bill in equity against David J. Ely and others, appellees, in the Circuit Court of Cook county, on the 28th day of April, A. D. 1863, to compel them to convey to him certain premises in the city of Chicago, to which he claimed title as the heir of his deceased child, Sarah Ely Parsons, the legal title to said premises being vested in the appellees.

On the 4th day of November, 1858, the appellant married Sarah A. Ely; and on the 27th of April, 1860, a child was born to them, who was named Sarah Ely Parsons. Mrs. Parsons died on the 31st of May, 1860. At the time of her marriage, and down to the time of her death, she was the equitable owner of the premises in question, the legal title being vested in trustees for her benefit. Sarah Ely Parsons, her only child and heir, survived her mother until the 15th day of July, 1861, when she died, leaving the appellant her only heir at law, and he claims in his bill, that, as such heir at law of his deceased child, he is entitled to have a conveyance of the legal title of the premises in question from the appellees.

Mrs. Parsons' interest in the premises was created by certain instruments made between her and other parties, just before her marriage with the appellant in November, 1858. The controversy arose as to the effect and proper construction of these instruments. They are as follows:

"Whereas, John W. Waughop, and Ellen his wife, of Chicago, county of Cook, and State of Illinois, by deed dated March 25, one thousand eight hundred and fifty-six, conveyed to David J. Ely of said Chicago, in trust for Phœbe A. Avery, the following property: Commencing at a point on the north side of Washington street, in Chicago, twenty-four (24) feet east of the south-

west corner of lot eight (8), block thirteen (13), Fort Dearborn addition; thence eastward on the south side of said street and north side of said lot, twenty-four feet; thence northward, and parallel with the west side of said lot, one hundred and eight feet to an alley twelve feet wide; thence westward along the south side of said alley, twenty-four feet; and thence one hundred and eight feet to the place of beginning, being parts of lots seven (7) and eight (8), and of the south half of the south half of lot six (6), block thirteen (13), Fort Dearborn addition: And whereas Phœbe A. Avery has in accordance with the provisions of trusts required said David J. Ely in writing, signed and sealed by her, and dated the ninth day of July, 1858, to sell and convey said premises: Know therefore all men by these presents, that I, the said David J. Ely, by virtue of the power in me vested by the said deed of trust, and in pursuance of the written order aforesaid, in consideration of sixteen thousand dollars (receipt whereof is hereby acknowledged), have conveyed, and by these presents do convey, remise, release and quitclaim unto Zebulon S. Ely of New York, and George Payson of Chicago, all the right, title and interest in law and in equity, in and to the said premises, which the said David J. Ely has acquired by virtue of said deed of trust, together with all the tenements and hereditaments thereunto appertaining:

" To have and to hold the same unto the said Zebulon S. Ely and George Payson, their heirs and assigns forever. In trust, nevertheless, and upon the conditions hereinafter declared; that is to say, to hold said property for the sole use and benefit of Sarah A. Ely, of said Chicago; to pay the rents, issues and profits into her hands, or the hands of such persons as she shall in writing appoint, for her own separate use, free from the debts, control or interference of any future husband, and on her own separate and individual receipt; also during the life of the said Sarah A. Ely, and upon her written order under seal to sell, alien, mortgage or incumber said premises in such way as she shall appoint, and to invest the proceeds in other real estate, or on good security, as she may appoint; said trustees to hold said proceeds subject to all the trusts herein specified, and said

property not to be sold, or mortgaged or incumbered in any other way than herein provided; and upon the further trust in event of said Sarah A. Ely dying and leaving children, to hold said property for the use and benefit of said children, to apply the proceeds to their education and maintenance, and to sell or mortgage such part of said property for such times and for such amounts as said trustees may think necessary and best fitted to advance the interests of said children, and to convey the residue to said children in equal portions successively as they shall each attain the age of twenty years; and in event of said Sarah A. Ely dying without issue living, to hold said property in trust for the use of David J. Ely or his heirs, and to convey the same to such persons as he or they shall, in writing, whether by deed or will, appoint.

"And it is hereby further agreed, that the said trustees shall be answerable for willful default only; that in case of the death, absence, resignation or inability of either, the other shall have full power to act in the premises as if he had been the only trustee originally appointed; that in event of such death, resignation or inability to act of one or both of said trustees, that then the said Sarah A. Ely shall have power to appoint a successor or successors, and in case of her death leaving infant children, her husband shall have like power and authority; the said appointment to be in writing, signed and sealed, and to confer upon the trustees so appointed all the powers herein expressed as belonging to original trustees, with the same liabilities and limitations and conditions in every respect whatever.

"In witness whereof, the said parties have hereunto set their hands and seals, the 27th day of October, A. D. 1858.

"DAVID J. ELY,          [SEAL.]

GEORGE PAYSON.          [SEAL.]

"In presence of CAROLINE D. ELY, MARY D. ELY."

"STATE OF ILLINOIS,          }
COOK COUNTY, CITY OF CHICAGO.  } *ss.*

"Before me, Peter Daggy, a notary public, in and for said city, personally came David J. Ely and acknowledged that he

signed and sealed the foregoing instrument of writing to be his act and deed for the purposes therein specified.

"In testimony whereof, I have hereunto subscribed my name and affixed my notarial seal this fourth day of November, A. D. 1858.                          [L. S.]

"P. DAGGY, *Notary Public.*"

"This indenture of three parts, made this third day of November, in the year of our Lord 1858, between Sarah A. Ely, of Chicago, of the first part, and James A. Parsons of said Chicago, of the second part, and Z. S. Ely of New York, David J. Ely and George Payson, of said Chicago, of the third part, —

"Witnesseth, that, whereas the said party of the first part is seized and possessed in her own right of a considerable amount of real and personal property; and whereas a marriage is shortly intended between said parties of the first and second parts, and it is the wish of said parties that said property of said party of the first part, which she now possesses, and such other as she may hereafter become possessed of, by inheritance or otherwise, from any source other than the said intended husband, be settled upon the said party of the first part for her sole and separate use, for and during the term of her natural life; now, therefore, this indenture witnesseth, that in consideration of the said intended marriage, the said party of the first part has granted and hereby grants, bargains and sells, assigns and sets over to the said Z. S. Ely, D. J. Ely and George Payson, parties of the third part, their heirs and assigns forever, all the personal property and effects, together with all the issues, rents, profits and income of the real estate of said party of the first part, in possession or expectancy, however derived, from any source other than her said intended, or any future husband, to the sole use and benefit of said party of the first part, her heirs and assigns, until the said intended marriage, and after the solemnization of said marriage, upon the several trusts hereinafter set forth.  That is to say: In trust to the said parties of the third part, their heirs and assigns, to receive and hold all

and every part of said property to the sole, separate and exclusive use and benefit of the said Sarah, free from the debts, control or interference of the said intended or any future husband in any way or shape, and to pay over into the hands of the said Sarah or into the hands of such person as she shall appoint, all such rents, issues, interest or dividends as may from time to time come to their hands, upon the written order of the said Sarah and her separate and individual receipt, which receipt shall be at all times, notwithstanding her coverture, a full and complete discharge for all moneys so paid, and in default of such written order, then from time to time to invest said issues, rents, interest and dividends and all such money or effects as shall come into their hands for said Sarah in public stocks or bonds and mortgage, or in such other good and safe investments as said trustees shall think best, and upon the written order of said Sarah, sealed and witnessed, to sell, alien, mortgage or incumber any or all of the real estate aforesaid, and to invest the proceeds anew, in such way as the said Sarah shall appoint and said trustees approve, and such proceeds, when so invested, to be subject to all the trusts and limitations herein contained; and it is hereby agreed by and between the several parties hereto, that in the event of the said Sarah dying and leaving a child or children, capable of taking by inheritance, the said parties of the third part are to hold said property, herein described or intended, in trust for the use and benefit of said children, to apply the proceeds of said property to their maintenance and education; and in case said proceeds or yearly interest of said property be insufficient for such maintenance and education, to sell, or mortgage, or incumber the whole, or any part of said property in such manner as might be necessary and to said trustees shall seem best fitted to promote the interests of said children, and to convey, assign, transfer and set over to said children the residue of said property in equal portions as they shall successively attain the age of twenty-five years.

"And it is further agreed by the said several parties hereto that in the event of said Sarah dying and leaving no children

capable of taking by inheritance, or in the event of the said children dying before attaining the age of twenty-five years as aforesaid, that then in either case said trustees shall hold said property in trust for D. J. Ely or his heirs, and shall convey, assign, transfer and set over said property to said D. J. Ely or his heirs, or to such persons as he or they shall appoint; it being the meaning and intent of this indenture to give the said Sarah a life interest in said property for her own exclusive use and benefit with remainder to such of her children as survive her; but in case she has no surviving children, then at her death, or if she leaves surviving children then upon their death, if occurring before the aforesaid age of twenty-five years the whole of said property to revert to and vest absolutely in the said D. J. Ely, his heirs and assigns, forever.

" And it is hereby further agreed that said trustees shall be responsible for willful default only; that in case of the death, absence, resignation or inability to act of any one or two of the said trustees, those remaining shall have full power to act in the premises, as if he or they had been originally sole trustee or trustees; that in the event of the death, absence, resignation or inability to act of all said trustees, the said Sarah shall have power to appoint a successor or successors, and in case of her death leaving infant children the said intended husband shall have the like power and authority, the appointment in either case to be made in writing, signed and sealed by said Sarah or her said intended husband (in the case provided), and to confer upon the trustees appointed all the powers herein expressed as belonging to the original trustees with the like limitations and conditions.

" In witness whereof, and of their individual assent and concurrence in each and all of the above trusts and agreements, the several parties hereto have set their respective hands and seals the day and year first above written.

"(Signed)      S. A. ELY,    [SEAL.]<br>
                 J. A. PARSONS, [SEAL.]<br>
                 D. J. ELY,    [SEAL.}<br>
                 G. PAYSON.    [SEAL.]"

On the 14th day of August, 1862, Z. S. Ely and George Payson, the trustees named in the last instrument, conveyed the premises in question to David J. Ely, by a deed which recites the death of Sarah A. Ely (Mrs. Parsons), and also, the death of her only child, without having attained the age of twenty-five years.

The bill alleges that on the 1st day of May, 1861, the appellant took a lease of the premises in question from David J. Ely, for one year, at a rent of $500; and that afterward, on the expiration of said time, the said David J. Ely leased said premises to the appellant until the 1st day of May, 1863.

The appellant was appointed administrator of the estate of his deceased wife; and as such, it is stated in his bill, he was entitled to the furniture and some other personal property, which belonged to his deceased wife.

On the 21st day of March, 1867, the defendants filed a general demurrer to the bill for want of equity. The cause was heard upon the demurrer. The demurrer was sustained and the bill dismissed. The case is brought to this court by appeal.

The errors assigned are, that the court erred, first, in sustaining the demurrer; second, in dismissing the bill.

Messrs. BECKWITH, AYER & KALES, for the appellant.

Messrs. SAMUEL W. FULLER and GEORGE PAYSON, for the appellees.

Mr. CHEIF JUSTICE BREESE delivered the opinion of the Court:

The view we have taken of the case presented by this record, renders it unnecessary to consider the question whether the deed of November 3, 1858, did or did not create a perpetuity by limiting the estate upon a contingency so remote as to avoid it for that reason. We have neither the time nor the inclination, as a proper decision of the case does not demand it, to explore that field, or to discuss the abstruse subject of a

condition and a conditional limitation of an estate, and the refined and subtle distinctions between them. We place the decision upon the appellant's agreement, as manifested by that deed, to which he was a willing party, and which, with a full knowledge of all the facts, he executed, and for a valuable consideration.

To what did appellant consent and agree by his executing that deed? He agreed that his intended wife, the party of the first part, was seized and possessed in her own right of a considerable amount of real and personal property; that a marriage was intended between the party of the first part and the appellant, the party of the second part, and that it was their united wishes that this property, and such other property as she might thereafter become possessed of, by inheritance or otherwise, from any source other than her intended husband, should be settled upon her, for her sole and separate use, for her natural life; that in consideration of this marriage, appellant agreed that the party of the first part should grant, bargain, sell, assign and set over to Zebulon S. Ely, David J. Ely and George Payson, who were the parties of the third part in the same deed, and to their heirs and assigns forever, all the personal property and effects, together with all the issues, rents and profits and income of her real estate, in possession or expectancy, to her sole use and benefit, her heirs and assigns, until the intended marriage should take place.

He further consented and agreed, that, after the marriage, the personal property and effects, and the rents, profits and income of the real estate, should be held by these trustees in trust, to the sole, separate and exclusive use and benefit of appellant's wife, free from his debts, control or interference, and to be paid over to her on her separate receipt, and they were required to sell, alien, mortgage or incumber, any or all of the real estate, as she might in writing, under seal, appoint. It was further agreed by and between these several parties, that, in the event of the death of the party of the first part leaving a child or children capable of taking by inheritance, the trustees were to hold "said property" in trust for the use of

such children, — to apply the proceeds to their maintenance and education, and if insufficient for that purpose, then to sell or mortgage the whole, or any part of " said property," in such manner as might be necessary; and the appellant agreed that the trustees should convey, assign, transfer and set over to such children, the residue of " said property," in equal portions, as they should successively attain the age of twenty-five years; and the appellant further consented and agreed, if his wife died, leaving no children capable of taking by inheritance, or in the event of the children dying before attaining the age of twenty-five years, then, in either case, the trustees should hold the property in trust for David J. Ely, or his heirs; and the appellant further consented and agreed, that the trustees should, the contingency happening, convey, assign, transfer and set over the " said property " to David J. Ely, or his heirs, or to such persons as he or they should appoint.

In the deed is found this declaration : " It being the meaning and intent of this indenture to give the said Sarah a life interest in said property, for her own exclusive use and benefit, with remainder to such of her children as survive her; but in case she has no surviving children, then at her death, or, if she leaves surviving children, then upon their death, if occurring before the aforesaid age of twenty-five years, the whole of said property, to revert to, and vest absolutely in, the said David J. Ely, his heirs and assigns forever."

Appellant manifested his individual assent and concurrence in each and all of the trusts and agreements specified in the deed, by placing his name and seal thereto.

We shall discuss only the questions which seem legitimately to belong to the case, and these are, on the admission that appellant, had he not executed the deed, would have been entitled to an estate in expectancy, could he deal with such expectancy in such manner as to bar him from any claim thereto ? That such an interest, though contingent, is a proper subject of contract, is settled by authority. The first case referred to by appellee's counsel on this point, is that of *Hobson* v. *Trevor*, beford Lord MANSFIELD, Chancellor, in 1723,

16 — 45TH ILL.

reported in 2 Peere Williams, 191. Trevor had encouraged Hobson to address his daughter with a view to marriage, and before the marriage he executed a bond to Hobson, in the penalty of £5,000, and in the condition, the then intended marriage was recited, and that the defendant, Trevor, had agreed, in consideration of the intended marriage, to settle and assure one-third part of all such real estate as should descend or come to him by and upon the decease of his father, Sir John Trevor, the master of the rolls, to the use of the plaintiff, Hobson, for life, remainder to the use of Elizabeth, the defendant's daughter, for her life, remainder to the heirs of the body of Elizabeth by the plaintiff, Hobson, remainder to the right heirs of the defendant Trevor; after which came these words: Now the condition of the obligation is, that if the said marriage shall take effect, and the said Edward Trevor shall, within three months after the death of his said father, settle and assure one-third of all such real estate as shall descend or come to him after his father's death, then the bond to be void. Sir John Trevor died intestate, by which a large real estate came to the defendant, as the eldest son and heir of his father.

Hobson and his wife brought their bill for a specific performance of this agreement, and it was decreed accordingly. In a previous case, *Beckley* v. *Newland,* id. 182, the same chancellor on a similar agreement in relation to personal property, made a like decree. In *Wethered* v. *Wethered,* 2 Eng. Ch. 184, it was held that an agreement between two sons, to divide equally whatever property they might receive from their father in his life-time, or become entitled to under his will, or by descent or otherwise from him, was not contrary to public policy, and would be enforced in equity, and reference is made to the case of *Beckley* v. *Newland, supra.* So, in the case of *Harwood* v. *Tooke,* id. 193, an agreement between two persons having expectations from a third, to divide equally whatever he might leave them, was held a valid agreement.

In *Lewis* v. *Madisons,* 1 Munf. (Va.) 303, it was held, that a contract under seal, between two brothers, by which one of them, for a fair and valuable consideration, agreed that when

he should obtain possession of a tract of land which he expected his father would devise to him he would convey it to the other, was not against good morals, and would support an action of covenant at law, or be enforced specifically in a court of equity.

In *Baylor* v. *The Commonwealth*, 40 Penn. 37, it was said, although a conveyance of an expectancy, as such, is inoperative at law, it may be enforced in equity as an executory agreement to convey, if it be sustained by a sufficient consideration. Page 43.

These cases arose upon executory agreements. In *Varick* v. *Edwards et al.*, 1 Hoffman's Ch. 382, which was an executed agreement, it was held, upon these authorities, that the sale of the expectation of an heir is not void in a court of equity, but, if made *bona fide*, and for a fair consideration, will be supported.

The doctrine is broadly stated in 4 Kent's Com. 261, that all contingent estates of inheritance coupled with an interest and executory interests, are assignable in equity, and they will be enforced if made for a valuable consideration, where the person to take is certain, and they are transmissible by descent, and are devisable and assignable.

When we look at the deed to which appellant was a party, we are forced to the belief that such a contingency as a complete failure of issue of his intended wife before they attained the specified age, was contemplated by the parties, of the first part, Sarah A. Ely, and the appellant, the party of the second part, and it was, no doubt, well known and understood, in that event, appellant, as the heir at law to his children, the mother being dead, would, under the laws of this State, inherit the property. This was a contingent interest which, by this deed, made for a valuable consideration, as marriage has been always held to be, appellant voluntarily transferred. He consented and agreed that he would not insist upon his rights should he ever become heir at law; but that David J. Ely, the father of his wife, should have the estate, he being the party from whom it was derived.

Now, if mere executory agreements of this nature will be enforced in equity, we can see no reason why one which is executed should not be sustained. It appears in the case, that appellant, after the conveyance by the trustees to David J. Ely, took a lease from him of the premises and furniture, and paid rent therefor, and now asks the court to set aside the agreement which has been fully executed. We think no case can be found wherein a court of equity has so disposed of an executed agreement entered into knowingly, for a valuable consideration, and in the absence of fraud. The cases we have cited go to show that equity will enforce, not destroy, such contracts.

It is urged by appellant, that this agreement was invalid, for the reason that a limitation was created not sanctioned by law; that it tended to the creation of a perpetuity, by tying up the estate beyond the period allowed by law, and, being invalid, appellant has lost no rights he possessed when it was executed. His counsel say that appellant was made a party to this deed merely to signify his assent to its execution, and nothing more can be implied from that act than his consent that the settlement then made should have whatever force and effect the law would give to it. He could give it no greater validity, nor can he in any way be prejudiced by inoperative provisions inserted in the instrument.

Suppose, for the sake of the argument, that the limitation over to David J. Ely, was void for remoteness, and that the child, at her mother's death, acquired, by virtue of the trust deed, an equitable estate in fee simple, discharged of the illegal limitation over; does it follow from this that appellant could not, for a valuable consideration, consent and agree, that, in that event, and in the event that he should become the heir at law of his child, he would not take it, but that it should pass to the father of his wife? Suppose, at the time the marriage was solemnized, appellant had, by a separate instrument under his hand and seal, for a valuable consideration, entered into the same covenants as appear in the marriage settlement articles, and the marriage had proceeded on the faith of those cove-

nants, can it be seriously contended the covenantor could, of his own pleasure, nullify them? Admit the limitation over was contrary to public policy and invalid, was not appellant a party to the transaction, without whose participation it could not have been made? Shall it be said that he, being *in pari delicto*, may invoke the aid of a court of chancery to upset the agreement, when the same has, in all its parts, been fully executed? If the parties to this deed of settlement have violated the law, the appellant was a party to it; if they have entered into mutual engagements, some one of which is not permitted by the law, can one of the parties whose *delictum* is as great as that of either of the others, and when the agreement has been executed in all its parts, ask the aid of a court of equity to undo what they have voluntarily done? No case can be found where this has been allowed.

The agreement having been made by appellant under all the forms of law, and in the most solemn manner, on the most interesting occasion of his life, that he would never in any event claim this estate, but that it should revert to David J. Ely from whom it was derived, the question is made, if this agreement did not operate as a conveyance, did it not operate as an estoppel? To this appellant replies, that, in order to give rise to an estoppel by deed, the instrument must be binding in law.

We have no disposition to controvert this doctrine, if there were no authorities to support it, as it is reason and common sense, but it is not contended here that the deed alone creates the estoppel. The estoppel arises from acts *in pais*, and is of an equitable nature. By the agreement thus executed by the appellant, he obtained for a wife the woman of his choice; he acknowledged Ely as the owner of the estate by leasing the same from him, paying rent for one year and hiring it for another year, and in all respects by his own voluntary acts, disclaiming all right to, and interest in, the estate. The case shows that, after the trustees had conveyed the estate to Ely, he paid off a heavy incumbrance on it, which, there can be no doubt, he was induced to do, on the faith of the acts, declara-

tions and conduct of the appellant in executing the deed, and his subsequent acts. It cannot avail the appellant now to say, that all that he did was in ignorance of his legal rights; he knew all the facts and has acted upon them, and David J. Ely has pursued a line of conduct in paying off an incumbrance which may justly be claimed as having been indorsed by the conduct of appellant.

Justice, in harmony with equity, demands that his pledged faith shall be kept; that the agreement he made, and which has been executed, shall be upheld; that a family settlement, to which he was a consenting party, should not be broken up on the strength or by reason of any allegation in his bill of complaint, and that the estate shall remain where the parties interested in it most clearly intended. We can see no merits in the claim — no equity in the case, and concur with the Circuit Court in the decision sustaining the demurrer, and in its decree dismissing the bill.

*Decree affirmed.*