CHARLES S. SIMPSON *et al.*

*v.*

ASA H. SIMPSON *et al.*

*Filed at Springfield September 23, 1885.*

1. ADVANCEMENT—*by father to son—death of the latter in the lifetime of the former—rights of children of the son—the statute construed.* The acceptance by a son of a conveyance of land from his father, in satisfaction of his share as prospective heir in the father's estate, will not only bar his own right to share in the distribution of the father's estate, real and personal, but also that of his children, in case he should die before his father.

2. The fourth section of the act of 1872, to the effect that if a child receiving an advancement from his father dies before the father, leaving issue, the amount thereof shall be allowed accordingly by the representatives of the son so advanced, as so much of their share of the estate, the same as if the advancement had been made directly to them, is not confined to cases of advancements made to a son after such act took effect, but applies equally to advancements made before that time, when the party making the same dies after the law took effect.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District, reversing a decree of the Superior Court of Cook county.

The case was submitted to the Appellate Court upon the following agreed state of facts: That John Simpson, Sr., departed this life intestate, December 3, 1880, leaving him surviving, his widow, and John Simpson, Jr., Andrew Simpson, George Simpson and Charles Simpson, his sons, and Rhoda Cox and Margaret Hammond, his daughters; that Amos P. Simpson, another son, died September 24, 1880, leaving him surviving Asa H. Simpson, Ida M. Simpson and Burnell Simpson, his children and only heirs-at-law; that Mary Pratt, another daughter of John Simpson, Sr., died

during the lifetime of her father, leaving her surviving, two daughters, Elizabeth Pratt and Frances Pratt, her only heirs-at-law. John Simpson, Sr., at the time of his death owned and possessed real estate and personal property, and an administration upon his estate was had in the probate court of Cook county, Illinois. In his lifetime he conveyed to John Simpson, Jr., certain real estate, and received back from him a release substantially like the one hereinafter set forth. He also conveyed to his sons Andrew Simpson and George Simpson certain real estate, with an express agreement between himself and them that the same was to be received by them in full of their respective shares in his estate. He also conveyed to Amos P. Simpson the land described in the following release, and the latter thereupon executed and delivered to his father said release in the words and figures following:

"In consideration of the conveyance to me this day of the W. $\frac{1}{2}$, E. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$, and sixty rods in width taken from the E. side of the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section number nine, 37 N. of R. 13 E. of the third principal meridian, in Cook Co., Ill., by John Simpson, my father, and Elsie Simpson, his wife, I do hereby release all claim and right which I have or may hereafter have or acquire as heir of said John Simpson, in all his estate, real and personal, in favor of the other heirs of said estate, except John Simpson, Jr., who has received his portion of said estate in the same manner as I have,—the conveyance to me of said premises as aforesaid being intended by my father, and accepted by me, in full satisfaction of all my interest in his estate.

"Witness my hand and seal this 29th day of January, A. D. 1855.                    AMOS P. SIMPSON.    [Seal.]"

It is further stipulated that the only question presented by this appeal is, whether the release above set forth is legally sufficient to bar said Asa H. Simpson, Ida M. Simpson and Burnell Simpson from having any share or interest in the

estate of their grandfather, John Simpson, Sr. The Superior Court decided that question in the affirmative, and on the appeal of Asa H. Simpson, Ida M. Simpson and Burnell Simpson, the Appellate Court reversed the decree of the Superior Court.

Mr. E. F. RUNYAN, for the appellants.

Messrs. VAN ARMAN & VALLETTE, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is well settled by the decisions of this court, that if Amos P. Simpson, the son of John Simpson, Sr., deceased, were now in life, he would himself, as heir, be barred of all claim and interest in his father's estate, from the acceptance by him from his father of a conveyance of real estate in full satisfaction of his share, as heir, in his father's estate. (*Parsons* v. *Ely,* 45 Ill. 232; *Bishop* v. *Davenport,* 58 id. 105; *Galbraith* v. *McLain,* 84 id. 379; *Kershaw* v. *Kershaw,* 102 id. 307.) Are the children and heirs of Amos P. Simpson in like manner barred, he having died in the lifetime of his father, John Simpson, Sr.? By our Statute of Descents the estate of a person dying intestate descends "to his or her children and their descendants, in equal parts, the descendants of a deceased child or grandchild taking the share of their deceased parents in equal parts among them." The latter clause is but the enactment of Blackstone's fourth canon of descents: "That the lineal descendants, *in infinitum,* of any person deceased, shall represent their ancestor,—that is, shall stand in the same place as the person himself would have done had he been living. * * * And these representatives shall take neither more nor less, but just so much as their principals would have done. * * * This taking by representation is called succession *in stirpes,* according to the roots, since all the branches inherit the same share that their root, whom they represent, would have done." (2 Black. Com. 216, 217.)

Question might be made, as Amos P. Simpson had received full satisfaction of and given acquittance for his share in his father's estate, whether, within the language of the statute, there was any share of the deceased parent, Amos P. Simpson, for his children to take. Without dwelling upon this, we pass to other coniderations.

At the time Amos P. Simpson received from his father this conveyance of real estate in satisfaction of his share in the father's estate, there was this provision of the statute upon the subject of advancement: "Where any of the children of a person dying intestate, or their issue, shall have received from such intestate, in his or her lifetime, any real or personal estate by way of advancement, and shall desire to come into the partition or distribution of such estate with the other parceners or distributees, such advancement, both of real and personal estate, shall be brought into *hotchpot* with the whole estate, real and personal, of such intestate; and every person so returning such advancement as aforesaid, shall thereupon be entitled to his or her just proportion of said estate." (Rev. Stat. 1845, p. 546, sec. 51.) This provision contains a clear implication that where there has been an advancement it shall debar sharing in the partition or distribution of an estate unless the advancement be returned. There appears here no offer of a return of the advancement. Under a Massachusetts statute, that where there had been advancements made they should be taken into consideration, and be deducted from the shares of the persons advanced, in the partitioning of intestate estate, it was held in *Quarles* v. *Quarles*, 4 Mass. 680, and *Kenney* v. *Tucker*, 8 id. 143, where a son received from his father a deed of real estate in satisfaction of his share in his father's estate, and the son died in the lifetime of the father, and afterwards the father died intestate, that it was an advancement to the son in full, and that the children of the son were barred from any share in the grandfather's estate.

But we have a statute that went in force July 1, 1872, (Laws 1871-72, p. 352,) which, by express enactment, meets the precise case at bar. Section 4 of the act is: "Any real or personal estate given by an intestate in his lifetime, as an advancement, to any child or lineal descendant, shall be considered as part of the intestate's estate, so far as it regards the division and distribution thereof among his issue, and shall be taken by such child or other descendant towards his share of the intestate's estate; but he shall not be required to refund any part thereof, although it exceeds his share." Section 5 provides that if the advancement is in real estate, and its value is expressed in the conveyance or in the written acknowledgment thereof by the party receiving it, it shall be considered as of that value in the distribution of the estate, otherwise it shall be estimated according to its value when given. And section 8 is: "If a child or other descendant so advanced, dies before the intestate, leaving issue, the advancement shall be taken into consideration in the division or distribution of the estate of the intestate, and the amount thereof shall be allowed accordingly by the representatives of the heirs so advanced, as so much received towards their share of the estate, in like manner as if the advancement had been made directly to them." This last section makes the representatives of a person advanced, to be affected by the advancement in the same manner as if the advancement had been made directly to them,—so that the children of Amos P. Simpson would, under this statute, be barred in like manner as he himself would be were he now living.

It is objected that this statute does not apply because the advancement was made to Amos P. Simpson January 29, 1855, and that the legal effect of the advancement must be determined by the statute in force at the time it was made. But why so? The statute, in allowing it operation here, in nowise affects, to their injury, the rights of Amos P. Simpson. or his father in respect of the advancement which had been

made, nor the contract which they had made. It was their contract that this land conveyed by the father to the son should be in full satisfaction of the son's share in the father's estate. Their purpose was, that neither the son nor his children should have any further interest in the father's estate, and that the remainder of the father's estate should all go to the other children unprovided for. The intent was, that this share of the estate should be extinguished as to all claimants. The statute provision that the son's children should be bound by the advancement received in the same manner as the son, was in aid of the contract between the father and son in giving it the precise effect which they intended. No rights of the son's children, he being then living, were affected by the passage of the act, with its application to advancements theretofore made. Such children had then, in their father's lifetime, no rights to be affected. It was entirely competent for the legislature, as respects any rights of appellees, to have enacted at that time that grandchildren should not inherit at all from grandparents; and it surely was not only unobjectionable, but highly proper legislation, that where a son had, by contract, received an advancement in full of his share in his father's estate, the children of the son, equally with himself, should be barred from inheritance in such estate. The statute is not, in terms, made in any way prospective in its operation,—to relate to cases of advancement thereafter to be made,—but it is enacted for the case of "any real or personal estate given by an intestate in his lifetime, as an advancement." When the grandfather, here, came to his death intestate, there was presented the case, under the statute, where a child, who had been advanced by the intestate in his lifetime, had died before the intestate, leaving issue; and we are of opinion the statute had operation as to such issue, without regard to the fact whether the time of making the advancement was before or subsequent to the passage of the statute. The statute had respect to the

amount, lessening it, which grandchildren, in a certain condition,—where an advancement had been made,—should inherit from grandparents, and was operative, we think, with respect to all grandchildren whom it found under such condition as named in the statute, at the time it was passed. The statute operated upon the existing state and condition of appellees at the time of the grandfather's death, and in so doing had no objectionable retroactive effect. This is the reasonable construction, in accordance with the terms of the statute, injurious to no existing rights at the time of the passage of the act, and the one which justice requires should be adopted.

It is claimed further that this court has decided that such a transaction as that between John Simpson, Sr., and Amos P. Simpson, is not an advancement, and reference is made to *Bishop* v. *Davenport,* and *Kershaw* v. *Kershaw, supra,* as so deciding. This is a misapprehension of those decisions. The question in those cases was, whether children who had received property under such an express contract as in this case, could, in disregard of their contracts, bring into *hotchpot* what they had received, and come in and share in the distribution of the estate,—and it was held they could not; that those were not such cases of advancement, under the statute, that the children who had thus received property upon an express contract that it should be in full satisfaction of their shares in their father's estate, could, after the death of the father intestate, bring what they had received into *hotchpot,* and claim the right to share in the distribution of his estate ; that they were barred by the express contract which they had made, from all share in the estate. This was all that was, in fact, decided in those cases, or intended to be decided. There are not in the present case, as in the former ones, persons claiming to share in an estate in opposition to their express contract by which they had received property in full satisfaction of their shares in the estate. The conveyance

39—114 Ill.

of land which Amos P. Simpson received from his father, was, in truth, an advancement,—something received from his father in anticipation of what he might receive by inheritance,—differing from a simple advancement in that it was an advancement in full, made such by the superadded express contract of the parties; and under the circumstances of this case, the advancement being regarded as one in full, the property conveyed can not be brought into *hotchpot*, and appellees can in nowise share in the distribution of the estate of John Simpson, Sr., deceased. As against the children of Amos P. Simpson, in order that they may be brought within the operation of this section 8 of the statute, we can have no doubt that what he thus received from his father should be regarded as an advancement, and that this is not inconsistent with any former holding of this court.

We are of opinion the Superior Court decreed rightly, and the judgment of the Appellate Court will be reversed, and the cause remanded for further proceedings in conformity with this opinion.                                        *Judgment reversed.*

Mr. JUSTICE SCOTT: I do not concur in this decision.

Mr. CHIEF JUSTICE MULKEY: While I concur in all that is said in the opinion in this case, I go further, and hold that notwithstanding the father of the grandchildren died before the intestate, the grandchildren must nevertheless take, if they take at all, *per stirpes*, and consequently their supposed rights are not and can not be superior to those of the father if he were living. As it is conceded if the father were now claiming instead of his children he would have no standing in court, it follows the situation of the latter is no better. The conclusion, then, to me, seems irresistible, that the statute relating to the subject is merely declaratory of the common law, and that in no view of the case are the grandchildren entitled to participate in the proceeds of the estate.