## JOHN W. HUDSON

*v.*

## ANDREW I. HUDSON.

*Opinion filed October 23, 1906.*

1. SALES—*estate in expectancy may be sold.* An estate in expectancy may be the subject of a contract of sale, and such a sale, when fairly made and based upon a valuable consideration, will be enforced by a court of equity.

2. APPEALS AND ERRORS—*chancellor's findings of fact will generally be upheld.* The Supreme Court will not reverse a decree upon questions of fact, where the findings of the chancellor are based upon conflicting oral testimony, unless it is apparent such findings are against the weight of the evidence.

WRIT OF ERROR to the Circuit Court of Shelby county; the Hon. S. L. DWIGHT, Judge, presiding.

W. H. WHITAKER, for plaintiff in error.

GEORGE B. RHOADS, and W. C. KELLEY, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of Shelby county by the plaintiff in error, against the defendant in error, to establish that the defendant in error, in whom it was admitted the legal title rested, held the title to the south-east quarter of the north-east quarter of section 14, in township 11, north, range 4, east of the third principal meridian, Shelby county, Illinois, in trust, to secure the payment of $500 which the plaintiff in error had borrowed of the defendant in error. An answer and replication were filed and a trial was had in open court, and a decree was entered dismissing the bill for want of equity, and a writ of error has been sued out from this court to reverse said decree.

It appears from the pleadings and proofs that the parties to the suit were brothers; that their father, Joel L.

Hudson, now deceased, was in 1896 a farmer residing near Shelbyville, where he owned four hundred and forty-three acres of farming land; that the plaintiff in error, who was married, lived upon forty acres of his father's land other than the land in question; that in 1896 he had trouble with his wife and they separated and he moved off of his father's land; that shortly thereafter he was arrested for poisoning the water of a well from which the family with whom his wife was staying took water; that he was bound over to the grand jury and subsequently indicted for said offense; that he applied to the defendant in error for financial aid to enable him to make a defense against said charge; that thereupon Joel L. Hudson conveyed the premises in question to the defendant in error, also about the same time made his will, in which he stated the plaintiff in error had received his share of his estate, and in which the premises were devised by him to the defendant in error, and the plaintiff in error executed and delivered to the defendant in error an instrument in writing whereby he transferred all his future expectancy in his father's estate to the defendant in error, and the defendant in error paid to him, or for his benefit, $500, which was used in the payment of the debts of the plaintiff in error and the expenses attending his arrest and indictment. Plaintiff in error testified that the $500 which he received from the defendant in error was a loan, and that the title to said forty acres of land, which it was understood was to be his share of his father's estate, was placed in the defendant in error by his father as security for its re-payment; and the defendant in error testified said sum was paid by him to the plaintiff in error in full for the purchase of the plaintiff in error's expectancy in his father's estate.

The questions here presented for decision are mainly questions of fact, and where, as here, the evidence is conflicting and the case was tried before the chancellor, who saw and heard the witnesses testify, this court will not reverse upon questions of fact unless it is apparent the trial

court has committed palpable error. *Gerber* v. *Gerber*, 155 Ill. 219; *Keyes* v. *Kimmel*, 186 id. 109; *Elmstedt* v. *Nicholson*, id. 580; *Dowie* v. *Driscoll*, 203 id. 480.

At the time Andrew I. Hudson testifies he bought his brother's interest in his father's estate, he and his brother went to the office of Thornton & Ragan, practicing lawyers in Shelbyville, and had drawn the following instrument in writing:

"I, John W. Hudson, hereby sell, assign, transfer and set over all of my right, title and interest, of every character whatsoever, belonging to me or in any way coming to me, or to which I am entitled in expectancy or otherwise, including both personal and real estate, in and to my father, Joel L. Hudson's estate, to Andrew I. Hudson, for value received.

"This 27th day of February, A. D. 1897.

　　　　　　　　　　　　　　　　JOHN W. HUDSON.
Witness by W. H. Ragan."

This instrument was signed by John W. Hudson and witnessed by Mr. Ragan and delivered by John W. Hudson to Andrew I. Hudson. Mr. Ragan testified upon the trial relative to the execution and delivery of said instrument, as follows: "John was the man that asked me to draw it. John came in and Andy right after him. John says, 'Hello,' or something like that. I was busy. I turned around and saw who it was. John says, 'I want you to draw a paper for me; Andrew and I have had a trade; he has bought me out in my father's estate, and I want a paper to show that it was in good faith, that everything was all right, and that it was my own free will.' Says I, 'John, what do you want me to put in it?' 'Well,' says he, 'he has bought me out.' Says I, 'Everything, personal and real?' and says he, 'Yes, sir,' and I drew the paper. I read it to him and then I handed it to John. I do not know whether he read it or not. He took it and looked at it. I have known John W. Hudson twenty-five years. I know he can write. I have had papers with his signature to them. He asked me to let him see the paper. I handed it to him and he handed it back. He sat down to my desk and signed it, and after he

222—34

had signed it I witnessed it and handed it back to John, and John handed it to Andy, and that was all. They went out."

Joel L. Hudson was the father of eleven children. Shortly after the execution of the instrument hereinbefore referred to he executed a will, in which he gave to John W. Hudson and two other sons five dollars each and divided the remainder of his estate into nine parts, two parts of which he gave to Andrew I. Hudson and the other shares in equal parts to his other seven children. Subsequently he deeded each of seven of his children forty acres and Andrew I. Hudson eighty acres of his land. At the time the deeds were prepared Joel L. Hudson stated to Mr. Ragan that Andy had bought John out; that he did not owe John anything, and that John had cost him more than any boy he had. In the will, and in conversations with people other than Ragan, Joel L. Hudson stated John W. Hudson had received his portion of his estate.

It has been repeatedly held that estates in expectancy may be the subject of contracts of sale. (*Parsons* v. *Ely,* 45 Ill. 232; *Kershaw* v. *Kershaw,* 102 id. 307; *Crum* v. *Sawyer,* 132 id. 443; *Gary* v. *Newton,* 201 id. 170.) This record is voluminous and the testimony is conflicting, but we have read it with care, and from a consideration thereof, and the briefs filed by the respective parties, are impressed with the conviction that the transaction between John W. and Andrew I. Hudson was an absolute sale of the expectancy of John W. Hudson in his father's estate to Andrew I. Hudson, and not a mortgage or pledge of his interest therein, and that the sale was fairly made and was supported by a valuable and ample consideration, and that the chancellor properly sustained the sale. In *Gary* v. *Newton, supra,* on page 180, it was said: "This court has held in a number of cases that an estate in expectancy is an appropriate subject of contract, and that agreements by expectant heirs in regard to their future contingent estates, when fairly made upon a valuable consideration, will be enforced in equity."

Having reached the conclusion that the chancellor properly held that the transaction amounted to a sale of the expectancy of John W. Hudson to Andrew I. Hudson in his father's estate, the other questions raised and discussed in the briefs become immaterial and need not here be considered.

The decree of the circuit court will be affirmed.

*Decree affirmed.*