## H. E. WATSON

*v.*

## H. S. WATSON *et al.*

*Opinion filed February 21, 1907.*

1. CONTRACTS—*proof of oral contract to convey must be clear.* To justify the enforcement of an alleged oral contract to convey land, where the Statute of Frauds is pleaded, the complainant must establish by clear proof the promise to convey, and that in reliance upon such promise he took possession, and with his own funds and with the knowledge of the promisor made lasting and valuable im- provements upon the land.

2. SAME—*what does not establish contract to convey land.* Proof that complainant's father, when informed by complainant of his in- tended marriage, said, "That is the very thing for you to do; I will live here with you forever and this property is yours," and that sub- sequently, when the complainant made the statement that the prop- erty belonged to him, the father replied, "It is yours, son, when I get through with it," does not establish a contract by the father to convey the land or leave it at his death to the complainant.

APPEAL· from the Circuit ·Court of Clay county; the Hon. TRUMAN E. AMES, Judge, presiding.

FRANK F. NOLEMAN, and JAMES H. SMITH, for appellant.

B. D. MONROE, and H. D. McCOLLUM, (EARL D. MONROE, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was a proceeding instituted by appellant, by bill in chancery, to establish a trust in appellee H. S. Watson, for the benefit of appellant, in seventy acres of land, and to enjoin said appellee from disposing of said lands by deed or other conveyance during his lifetime, to take effect at his death.

Appellee H. S. Watson is the father of appellant, H. E. Watson. The bill charges that appellee H. S. Watson was seized in fee of the land in question, and on July 2, 1900, entered into a parol agreement with appellant that if appellant would remain upon the premises, where he was then living with appellee, and occupy the same and make necessary improvements thereon and furnish appellee a home with him for the rest of said appellee's natural life, the latter would then and there deliver possession of said premises to appellant, who should have and hold such possession during the remainder of said appellee's natural life, and that appellee would convey said premises to appellant by will or other proper conveyance, to take effect at the death of said appellee, upon the happening of which appellant should become the sole and exclusive owner of said premises. The bill further alleges that, in consideration of said promises and agreement, appellant, with his family, continued to reside upon the premises and occupy the dwelling house and other buildings thereon, and by reason thereof was induced to and did abandon plans and intentions to establish a home for himself elsewhere; that appellant has expended large sums of money in improving and caring for the premises and paying taxes thereon; that he cared for and furnished appellee with a

home until the month of November, 1904, when appellee got married and built and moved into another house; that appellant has been at all times ready and willing to keep and perform the agreement between him and appellee and is willing to provide him and his wife with a suitable home and care, but that appellee refuses to live with appellant and make his home with him, and is endeavoring to sell the lands and defeat appellant's title and interest therein. The answer of appellee H. S. Watson admitted that he owned the land and had offered to sell the same, but positively and directly denied making any such agreement as is set out in the bill and denied every other material allegation in said bill contained. The answer also set up and relied on the Statute of Frauds. The answer of Ruth V. Watson, wife of H. S. Watson, admitted her marriage to the said defendant H. S. Watson on June 8, 1904; denied complainant supported and cared for them while they lived in the house with him, and as to all other matters in the bill adopted the answer of her husband, H. S. Watson. The cause was heard on oral proof before the chancellor and a decree entered dismissing the bill, from which decree this appeal is prosecuted.

It appears from the evidence that appellant having failed in business in the city of Louisville, Clay county, at the invitation of his father in 1891 went to live with his parents on the farm in question, which is near the village of Iola, in said county. Appellant's wife had died some years previous to this time, and his parents had given his children, one of whom was an infant and the other about two years old when their mother died, a home with them from and after her death. Appellant was a widower when he went to live with his parents, in 1891; and so continued to July, 1900. Appellant's mother died in April, 1900. During all the time appellant was living with his father previous to 1900 there was no arrangement between him and his father about any compensation or division of profits from their farming operations, and it is not claimed by appellant that during these

nine years he remained on the farm by reason of any promises of his father to convey him the land. We do not understand from the evidence appellant gave all his time to his father's business. He says he was engaged in trading and other enterprises on his own account. The bank account was kept in his father's name but was checked on by both father and son. In July, 1900, appellee H. S. Watson was making preparations to visit a daughter in Ohio. The only women in the house were two girls who had lived there and kept house for the two men. One of them, named Carrie, had lived with H. S. Watson's family a good many years. Appellant was engaged to be married to her but had not informed his father of it until the night of July 2, 1900. He testified that on that night he told his father of his intended marriage and that it was to occur two days later, July 4. His exact language is: "I called my father out, and, says I, 'Pa, I am going to get married on the 4th of July,' and says he, 'Who to?' and says I, 'To Carrie.' He put his hand on my shoulder, and, 'Son,' says he, 'that is the very thing for you to do.' Says he, 'I will live here with you forever and this property is yours.' " This is the contract as disclosed by the testimony of appellant. After complainant's marriage he and his wife continued to live in the house of appellee H. S. Watson, and the latter, when at home, lived in the same house also. In June, 1904, H. S. Watson was married to a woman living in the State of New York and brought her to the farm soon after the marriage. The two families lived together until November, 1904, when H. S. Watson built a small house on the tract of land in controversy and moved into it. The relations between the father and son seem to have been of a pleasant and cordial nature until the father's marriage, in June, 1904. After that there were misunderstandings and quarreling between them. Appellant had received the greater portion of the rents from the farm from the year 1900, but his father received some of them. The relations between the parties became more strained as time

went on. On one occasion appellant testified he told his father the farm belonged to him and that he knew it, and that his father replied, "It is yours, son, when I get through with it." There was some other testimony offered by appellant to the effect that his father had said that he intended appellant to have the farm. The proof as to the improvements made by appellant was, that he had built a concrete walk, erected a wire fence around the house, changed a stairway and some partitions, constructed a bay window in the residence, built a hen-house and done some filling in the yard. The cost of the whole improvement made by appellant was less than $150, and appears to have been made more for his own convenience than with a view of improving the property. He testified the land was worth $100 an acre. There were about seventy acres in the farm. Appellee H. S. Watson positively denied making any agreement or promise to convey appellant the land if he would continue to live upon it and care for appellee and furnish him a home. He testified that when appellant told him he was going to marry Carrie he told appellant he was glad of it; that she was a noble girl and would make him a noble wife. He says he took it for granted appellant would continue to live there on the farm, which he and his wife did, but denies that he said to his son the place was his and he would live with him forever. He denies that his son was authorized to collect the rents after 1900, but says he in fact did collect the most of them; denies that his son supported him while they lived together, and claims to have furnished a portion of the living for the family himself.

It is unnecessary to set out any further testimony. The only parties who testified as to the contract were appellant and appellee H. S. Watson. Upon that subject, as well as upon almost every other material question involved in the case, their testimony is directly conflicting. The chancellor saw the witnesses and heard them testify, and before we would be justified in disturbing the decree it must be made

to appear that it was against the palpable weight of the evidence. *Hudson* v. *Hudson,* 222 Ill. 527.

So far as the improvements made by appellant upon the premises are concerned, they do not appear to have been of a very substantial or permanent character, and some of them, at least, were made without the knowledge of appellee H. S. Watson, for he was away from home visiting at the time. The proof shows he spent considerable time visiting relatives in the different States. In *Standard* v. *Standard,* 223 Ill. 255, it was held that to justify enforcing an oral promise to convey land where the Statute of Frauds is pleaded, the complainant must establish by clear proof that he took possession under the terms of the promise and made lasting and valuable improvements on the lands with his own means, relying upon the promise, with the knowledge of the promisor. Under the conflicting state of proof this court cannot say appellant's evidence complied with these requirements.

The fact that at different times appellee H. S. Watson said he expected appellant to have the farm is by no means conclusive of an agreement to convey it to him by either deed or will. The value of such statements and declarations is discussed in *Geer* v. *Goudy,* 174 Ill. 514. We are furthermore of opinion that appellant's own testimony does not establish the contract set out in his bill. We have above given, in substance, the contract as set out in the bill and that as shown by appellant's own testimony. A reference to them will show that the contract alleged in the bill is not proven by the testimony. It was incumbent on appellant to prove the contract substantially as alleged in his bill. *Kidder* v. *Vandersloot,* 114 Ill. 133; *Clipson* v. *Villars,* 151 id. 165; *Gage* v. *Curtis,* 122 id. 520.

The decree is affirmed.          *Decree affirmed.*