JOSHUA HILTON,
Petitioner for Partition,

*vs.*

OTIS M. HILTON.

Somerset.    Opinion October 1, 1907.

*Parent and Child.    Advancement.    Estoppel.    Executed Contract.    Consideration Illegal in Part.    R. S., chapter 77, sections 4, 5, 6.*

1.  By Revised Statutes, chapter 77, sections 4, 5 and 6, when a parent and child (of age) agree in writing that the transfer of certain property and property rights from the parent to the child shall be deemed an advancement equivalent to the whole amount of the child's share as heir in the parent's estate such agreement will bar the child from any share in such estate.

2.  An acknowledgment by a child in writing that he receives the transfer of certain property rights and certain releases of causes of action from his parent in full of all demands he "claiming as heir or otherwise has or may have against the estate of" the parent, is an acknowledgment that he receives them as an advancement of his whole share as heir of his parent, and bars his claim to any share after the parent's death.

3.  That, after the death of the parent, the other heirs for a time admitted to some extent the claims of such child to a share in the estate does not estop them from afterward denying his right to further share.

4.  That among the releases to the child by the parent of causes of action was a promise not to institute criminal proceedings, does not invalidate the advancement. While illegality of part of the consideration may prevent the enforcement of an executory contract, it does not undo an executed contract.

Petition for partition.   On report.   Petition dismissed.

Petition for partition brought in the Supreme Judicial Court, Somerset County.   The petition is as follows :

"To the Honorable Justices of the Supreme Judicial Court next to be holden at Skowhegan, within and for the County of Somerset, on the third Tuesday of September, A. D. 1906.

"Respectfully represents Joshua Hilton of Norridgewock in the County of Somerset that he, as tenant in common, is seized in fee simple of one undivided half of the following described real estate situated in Anson, said County of Somerset, and bounded and described as follows, to wit :   Beginning at a point six rods west of the westerly side of the road leading from Madison Bridge over Spear Hill, so called, by the dwelling house formerly owned by John M. Hilton, said point being at the north-west corner of land of Fannie A. Sprague ; thence westerly along the south line of land formerly owned by said John M. Hilton to the land formerly owned by Elijah Hilton ; thence southerly to land formerly owned by Nathaniel Ingalls ; thence easterly to land deeded by Joshua Hilton to school district's said land ; thence east to said first mentioned road ; thence northerly along said road to land of said Fannie A. Sprague ; thence westerly along said Fannie A. Sprague's land to the south-west corner thereof, thence northerly six rods to the point of beginning.

"It being the same premises deeded to Joshua Hilton by Otis M. Hilton by deed dated April 10th, 1903, and recorded in volume 263, page 522, of Somerset Registry of Deeds.

"That Otis M. Hilton of Anson, said County of Somerset, is seized in fee simple of one undivided half part of said above described premises.

"That said real estate ought to be divided.

"He, therefore, prays that partition thereof be made according to the statute in such case made and provided.

"Dated at Norridgewock this 13th day of August, A. D. 1906.

"JOSHUA HILTON,"

The defendant in reply to this petition filed a brief statement which, omitting formal parts, is as follows:

"And now the said Otis M. Hilton comes and defends and says that said partition ought not to be made as prayed for and as a reason . therefor says that said land, on January 31, 1903, was owned by Joshua Hilton, the father of said Joshua Hilton, the petitioner, and said Otis M. Hilton, the respondent, they being the only children of said Joshua Hilton and that in consideration of certain advances made by said Joshua Hilton, the father of said Joshua Hilton, the petitioner, then known as Joshua Hilton, Junior, said petitioner, Joshua Hilton, acknowledged by his agreement in writing, dated the 31st day of January, A. D. 1903, duly sealed, a copy of which is hereto annexed, that said advances made to him by the said Joshua Hilton were in full payment and satisfaction for his share in all of his father's estate and relinquishing all his interest in the estate of his father, the said Joshua Hilton, at the time of his decease, and by said agreement barred any claim which he might otherwise have had to share in the estate of his said father; that said Otis M. Hilton is entitled to have and hold all of the real estate which the said Joshua Hilton, father of said petitioner and said Otis M. Hilton, had at the time of his decease, including the parcel described in said petition."

A counter brief statement was then filed by the plaintiff which, omitting formal parts, is as follows:

"And now the said plaintiff comes and in reply to the defendant's brief statement denies that any such advancement was so made to him said plaintiff by said Joshua Hilton, deceased, as set out in said defendant's brief statement, and also denies that he, said plaintiff, is in any way or manner debarred from his claim to his said share in said real estate set out in his said petition."    ○

The written instrument of agreement, dated January 31, 1903, referred to in the defendant's brief statement and also in the opinion is as follows:

"This agreement made by and between Georgia M. Hilton and Joshua Hilton, Junior, both of Norridgewock in the County of

Somerset and State of Maine, parties of the first part and Joshua Hilton of Anson in said County and State, party of the second part—

"Witnesseth : Whereas certain controversies have arisen between the parties hereto, and they are desirous of affecting a full settlement of all differences and difficulties between themselves, therefore in consideration of the mutual agreements herein expressed, agree as follows—

"First—The parties of the first part hereby acknowledge full satisfaction of all demands they or either of them have against the party of the second part, his heirs and personal representatives and acknowledge receipt in full of all demands they or either of them, claiming as heir or otherwise, have or may have against the estate of Joshua Hilton.

"The parties of the first part further agree to allow the party of the second part or his agent to enter upon the premises now occupied by them in Norridgewock for the purpose of removing certain goods and chattels herein mentioned, the property of Joshua Hilton, at any time between the date hereof and the 15th of March 1903 ; they further agree to pay said Joshua Hilton the sum of $225.00 upon the delivery of this agreement.

"Second—Joshua Hilton, the party of the second part, upon the receipt of the $225.00 hereinbefore mentioned, acknowledges full satisfaction of all demands of whatever kind or nature he has against the parties of the first part or either of them, and hereby agrees that he will not institute, begin or prosecute any action, complaint or proceeding of any nature against the parties of the first part or either of them for any cause now existing; he further agrees to execute and deliver to Georgia M. Hilton, upon the delivery of this agreement, a deed of quitclaim of all his right, title and interest in and to the premises in Norridgewock, occupied by the parties of the first part, reserved by the party of the first part in a deed from Joshua Hilton to Joshua Hilton, Junior, dated November 9, 1881 and recorded in Somerset Registry of Deeds in Book 163, page 517.

"Said party of the second part hereby sells and conveys to the parties of the first part all his right, title and interest in and to all

personal property upon or around said premises in Norridgewock, occupied by the parties of the first part, except a picture of the late wife of Joshua Hilton, her clothing, one wheelbarrow, one grindstone and frame, one jumper or sleigh, and all dishes and crockery ware belonging to said party of the second part; all of which latter named articles were left by the party of the second part on the above mentioned premises, and it is mutually agreed that they shall be moved from said premises by the party of the second part or his agent between the date hereof and March 15, 1903.

"In witness whereof the parties have hereunto set their hands and seals this 31st day of January 1903."

This instrument was duly executed by the parties named therein.

Heard at the December term, 1906, of the Supreme Judicial Court, Somerset County. At the conclusion of the testimony, the case was reported to the Law Court "for determination upon so much of the evidence as would be legally admissible if seasonably objected to. Either party may produce for the inspection of the Law Court original papers, such party being responsible therefor."

The case is stated in the opinion.

*Walton & Walton*, for plaintiff.

*Butler & Butler*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, STROUT, PEABODY, CORNISH, KING, JJ.

EMERY, C. J. Joshua Hilton died intestate leaving two children only, as heirs, the petitioner and the respondent in this petition for a partition of the real estate of the deceased intestate. The respondent claims that the petitioner received from their father in his lifetime a gift and grant which the petitioner accepted and acknowledged in writing as a full advancement of all his distributive share in the real and personal estate of his father, and hence has no title to any part of the real estate sought to be divided.

In this State the whole subject matter of the devolution of the property of a deceased intestate, including advancements, is gov-

erned by statute. The statute on descent of real estate (R. S. ch.
77) provides, (in sec. 4) that gifts and grants of real or personal
estate to a child or grandchild shall be deemed an advancement
when so expressed therein, or acknowledged in writing to be such;
(in sec. 5) that when the value of an advancement is determined
by the intestate in his gift or is acknowledged in writing it (that
value) shall be allowed in the distribution; and (in sec. 6) that
when the advancement in real or personal estate exceeds the recip-
ient's share in the real or personal estate, as the case may be, he
shall receive so much less of the other on distribution as will make
his whole share equal. These sections authorize a parent and child
to fix for themselves the value of the advancement, and whenever
they do so that value so fixed, large or small, is to be allowed in
the distribution even if it be fixed as the equivalent of the child's
whole share in both the real and personal estate. It is thus compe-
tent for a child by accepting an advancement, however small, to
debar himself from all right to share in his parent's estate, however
large. *Smith* v. *Smith*, 59 Maine, 214; *Nesmith* v. *Dinsmore*,
17 N. H. 515; *Simpson* v. *Simpson*, 114 Ill. 603 (4 N. E. 137);
*Palmer* v. *Culbertson*, 143 N. Y. 213.

From the report in this case it appears that controversies had
arisen between the petitioner and his wife on the one hand, and his
father on the other. To adjust these controversies and prevent
litigation over them, the parties signed and delivered each to the
other a written instrument of agreement, releases and conveyances,
dated Jan'y 31, 1903 and herewith printed as a part of this opinion.
By this instrument the father on his part released to the petitioner
and his wife all demands of whatever nature he had against either
of them, also released to them his rights in certain personal property
in Norridgewock, and bound himself to give them a quitclaim of
certain real estate there. It is not questioned that such quitclaim
was duly given as a part of the transaction. As a result the
petitioner received from his father property, or property rights,
presumably of some pecuniary value and which would constitute an
advancement if so intended and such intention evidenced in writing
as required by the statute.

VOL. CIII 7

By the same instrument the petitioner and his wife on their part, and in consideration of the releases, conveyances and agreements made therein by the father, acknowledged full satisfaction of all demands against him, his heirs and personal representatives, and also "receipt in full of all demands they or either of them claiming as heir or otherwise have or may have against the estate of" the father. It is urged in argument by the petitioner that this latter clause had reference only to claims as heir of the petitioner's mother, the father having received some property inherited by the petitioner from his mother. The first clause, however, that acknowledging "full satisfaction of all demands" against the father "his heirs and personal representatives," is most comprehensive, and completely covers all the petitioner's claims against his father as heir of his mother. The addition of the second clause after such a comprehensive clause, and the specification in it of "the estate" of the *father* as the estate to be freed from the petitioner's claim as heir, satisfy us that the petitioner in writing acknowledged the benefits accruing to him from the transaction to be an advancement.

The real value of the releases and property interests thus given and granted to the petitioner, is of course quite problematical, but the petitioner accepted them in writing as the full equivalent of whatever share might otherwise come to him in his father's estate, large or small. That was the value fixed by the parties and by them put in writing to satisfy the statute. The petitioner was of full age, of sound mind and so far as appears acted freely and understandingly. In view of the situation at the time, he may have deemed his chance of receiving anything from his father's estate by will or descent as very slender and with good reason have preferred the arrangement made in the writing. He was authorized by the statute to make such an arrangement in writing and we think he has done so and thereby received in his father's lifetime what he acknowledged to be his full lawful share in his father's estate.

It was contended in argument that the father afterward repented and intended to destroy or cancel the writing and restore the petitioner to his position as heir. We do not think the evidence supports the contention. True, the respondent at first seemed to have

regarded the petitioner as a co-heir. He joined with him in the petition for administration and divided with him a large part of the personal property. He may have done all this under a misapprehension of the effect of the writing. It does not bar him from now setting it up, nor does it prove that it was cancelled by his father. The writing was not destroyed nor cancelled, but came into the possession of the respondent. If the father had the intention to destroy or cancel it he did not carry such intention into effect.

It is finally urged that the arrangement itself was invalid, of no force as an advancement or otherwise, because a part of the consideration was the promise not to institute criminal proceedings against the son. If this suit were an action upon the promise contained in the written instrument the illegality of that promise might be a defense. Illegality of consideration, or even of part of the consideration, will usually prevent the enforcement of an executory contract, but we are not dealing here with an executory contract, with things to be done; we are dealing with an executed contract with things done and past, and their effect. The arrangement was consummated. The petitioner received the advancement, and in exchange parted with his expectancy of inheritance. If one actually part with property or property rights for an illegal consideration he cannot for that reason alone reclaim them. *Rich* v. *Hayes*, 99 Maine, 51; *Worcester* v. *Eaton*, 11 Mass. 368; *Sturm* v. *Boker*, 150 U. S. 312.

*Petition dismissed with costs.*